Judge Underwood
delivered the opinion of the Court.
The Bracken county court, at their May term, 1828, admitted to record a paper, purporting to be the last will and testament of Wm. Elliott, deceased. To reverse the order then made, Field and M’Clannahan, have prosecuted a writ of error, against the executor, they being entitled to a share of the estate, ifi case this court decide against the will, which is assailed upon two grounds.
1st. The want of capacity, or soundness of mind, on the part of the testator.
And, 2d, The undue influence exercised over him, by his son and executor, who after bis mother’s death, *341 will be, under the will, entitled to the estate exclusion of his brothers and sisters, and their
In regard to the first point. The subscribing witnesses to the will, declare, that they discovered at the time of its execution, nothing like alienation of mind. On the contrary, they bear testimony, that the testator possessed a degree of mental or intellectual power, which qualified him to dispose of his property by last will. The draftsman of the will, stated, that the testator had a paper once written for his will, but never executed, which the draftsman read over, and then inquired, what alterations the testator wished him to make, that the testator then gave him directions, as to the alterations, he wished made, and that he wrote the will, according to the directions received. The will after it was written, was twice read to the testator. He said it was right. He rose in his bed and signed it by making his mark. The subscribing witnesses, three in number, attested it in his presence. The facts detailed by the draftsman of the will, leave no doubt on our minds, as to the sanity of the testator at the time. He also stated, that he saw nothing like dictation to the testator, on the part of his son "William, who is supposed to have exercised undue influence over.the old man, his father.
Many other witnesses, introduced, to testify as to the sanity of the testator, stated conversations had with him, and business transacted with him, all evidencing the existence of the powers of/memory, judgment, and reason, both before and after the date of the will, in relation to a variety of subjects. These witnesses abundantly confirm the opinion, that the testator was possessed, at the date of his will, of such soundness of mind, as to have legal capacity on that ground, to make a valid will and statement.
The opposing testimony shewed, that the testator was for two years previous to his death, much afflicted by disease and infirmity of body; that he was about •seventy years of age, and that he sustained great losses, in consequence of having been bound as surety for one of his sons, a constable who had failed. On that account, the old man was harrassed by law subs, was compelled to sell negroes and other properly, for *342 Purpose of raising money, and often expressed and fear, that he would be entirely broken up, and that his aged wife, would be stript of every thing, and be left in abject poverty, These afflictions of body and mind, produced in the opinion of several witnesses, such mental debility, as to render the testator, incapable of making a sound disposition of his property, or of exercising a discriminating judgment, in regard to it. But these witnesses, did dot detail any acts or expressions, on the part of the testator, which established habitual, much less constant alienation of mind. Their evidence amounted to no more than shewing, that age, disease and sorrow,had combined to enfeeble the understanding, ^'ae ^s^or, not to extinguish it. It cannot be admitted, that intellectual feebleness, is sufficient to deprive an adult man or woman, of the right guaran^y law, to dispose of their estates, by last will an<^ testament, unless the weakness be to such an extent, that the disposition of the estate attempted, bears on its face, intrinsic evidence, of a deranged and powerless understanding. A mind not wrecked by a fixed and settled derangement, partial or general, although weak, if capable of taking a survey of all the testator’s estate, and capable of dictating, in a connected intelligible manner, a disposition of the property, according to its wishes, without being prompted or swayed, by direct intermeddling, from officious or designing relatives, or pretended friends, in our opinion, is sound, in the contemplation of the statute of wills. That the testator in the present case,is shewn to have possessed intellect, according to this rule, is establish-' ed by an irresistable preponderance of evidence. The disposing mind and memory, is more satisfactorily shewn in this instance, than it was in the case of Turner’s first will, established by this court; I. Littell, 103.
intellectual fcebleness a-‘ione, does not í'erson to^ Sakea will.
Upon the second point. Many witnesses detailed conversations had with William Elliott, the son of thé testator, which evince much anxiety on his part, to se&ure'; to himself, the property of his father. It is also shewn, that the testator, under the .apprehension of-being reduced to want, in consequence of the debts pressing him, on account of his son, the constable, *343 Was willing to convey his property to his son William, or any other friend, with a view to save it. With this view, a consultation was had, with one of the witnesses, who dissuaded him from it. It is also shewn, that for some time before his death, his son William, managed his affairs for him, and that he sometimes declined transacting business, with those who visited him, and referred them to his son. Under these circumstances, it may be readily believed, that the son’s influence, was not inconsiderable, with the father. It is moreover shewn, that the testator was illiterate. He declared to one of the witnesses he could not write. Hence, their is great reason, at his advanced age, to rely on the assistance of his son in doing business, and it would be very natural for him to yield his assent, to almost every proposition, in relation to business, that his son would make. But there is no proof, that William Elliott, junior, exercised any influence, which the ascendancy, he had acquired, rendered possible,in controuling his father, and inducing him to dispose of his property, by the will, contrary to his settled inclination and judgment. A weak mind, if left to itself, may make a will, which we would not disturb, but which would be set aside, if it were shewn, that the thoughts and arrangements of such a mind, were operated upon, by the influence of a child, who thereby promoted his interest, at the expense of his brothers and sisters. But such undue and improper influence must be exercised, and proved. In this case it has not been done. It is shewn we admit, that some years before the testator’s death, he had a sale of property among his children, with a view to distribute it, and kept an account of the values, according to the bidding, advanced to each, in order thereafter, to make an equal distribution among them, as he declared after thisj, and before the will was made,- his circumstances experienced a great change. One son brought ruin upon him, by failing as a constable; another seize! and took off some horses, without permission; the tator complained, that his children, except Wilj had forsaken him. If these things were true/-, that they were, the evidence conduces to proved had reason to declare, as one of the witnesses *344 he did, that those who had thus forsaken him* should get no more of his estate. Under such circumstances, to secure it to his wife, for life, with remainder,to his son, who had waited on him, and done his business, in the last years of his existence, was reasonable, and just as it should be. Especially, when at the date of the will, it was very uncertain, whether any thing would be left after the payment of debts; and what seems to be left, is not considerable, and scarcely worth distribution among so many children*
Influence of á son in whose made Unless* shewn to be improperly felting the16" will,
Marshall, Mills and Brown, for the will; Denny, against it.
The judgment of the county court, is affirmed with costs.