## BARBOUR v. MOORE.

Ejectment, Plea in ; Wills, Probate of, as Evidence ; Testamentary Capacity ; Undue Influence ; Evidence, Declarations of Testator as ; Costs on Appeal.

1. The general issue plea of not guilty in an action of ejectment denies the whole ground of action, and the only exception to the general rule is a plea to the jurisdiction. Special pleas, except as to jurisdiction, are unnecessary and improper.
2. The probate of a will of real estate is *prima facie* evidence in this District, under the act of Congress of July 9, 1888, Ch. 597, of the due execution of the will and of its contents.
3. It is error for a trial court to charge the jury in a case involving the question of the testamantary capacity of a testator, that they are to take into consideration, " as one important element either for or against the will the contents of the will itself, the character of its provisions, the objects of the testator's bounty, and the reasonableness of the provision or provisions the will makes." A jury has no right to find against the validity of a will because they may think it unreasonable.
4. Any degree of importunity or undue influence which deprives a testator of his free agency, and which is such as he is too weak to resist, and in effect renders the instrument not his free and unconstrained act, is sufficient to and will invalidate the instrument as his will or testament.
5. In a case in which a will is assailed for alleged want of testamentary capacity of the testator and the exercise of undue influence, the declarations of the testator are admissible to show his motive, feelings and designs ; and an instruction to the jury in such a case that declarations made by the testator in regard to past transactions are to be considered solely as they might

throw light upon his mental condition, and not as proving or
tending to prove the truth of such statements, is erroneous as
tending to mislead the jury as to the way in which the decla-
rations should be considered by them.

6. When the transcript of a record on an appeal consisted of 995
printed pages, and the judgment below was reversed, the
court, on a motion by the appellees and a showing that the
record was unnecessarily extended by the appellants, *ordered*
that the cost of printing be equally shared by the parties.

No. 304.   Submitted October 12, 1894.   Decided December 3, 1894.

HEARING on a bill of exceptions by the defendants in an
action of ejectment.   *Judgment reversed.*

The FACTS are sufficiently stated in the opinion.

*Mr. Henry Wise Garnett, Mr. Conway Robinson* and *Mr.
Henry P. Blair* for the appellants :

1. Mere peculiarities and eccentricities of conduct, appear-
ance, and character, however great, do not incapacitate a
person from making a valid will.   *Lee* v. *Lee,* 4 McCord (S.
C.) L. 183 ; *Leeper* v. *Taylor,* 47 Ala. 224 ; *McMasters* v. *Blair,*
29 Pa. St. 354 ; *Cauffman* v. *Long,* 82 Pa. St. 77–80.

It is only necessary that the testator should possess such
mental capacity at the time of executing his will.   *Lowe* v.
*Williamson,* 1 Green's Ch. Rep. (2 N. J. Eq.) 86.   It was error
for the court to tell the jury that they were to take into
consideration the contents of the will itself, the character of
its provisions, the objects of the testator's bounty, and the
*reasonableness* of the provision or provisions the will makes.
*Means* v. *Means,* 5 Strob. (S. C.) L. 190.

2. It is well settled law, that however great the influence
resulting from kindness and affection and from family and
social relations may be, it has no taint of unlawfulness in it,
and there will be no presumption of its actual unlawful
exercise merely from the fact that it is known to have ex-
isted, or even from the fact that it has manifestly operated
on the testator's mind as a reason for his testamentary dis-
positions.   *Means* v. *Means,* 5 Strob. (S. C.) L. 190 ; *Mintzer*

*v. Baker*, 5 Phil. (Pa.) 456; *Leeper* v. *Taylor*, 47 Ala. 222.

Undue influence to avoid a will must amount to *force or coercion destroying free agency.* *Conley* v. *Nailor*, 118 U. S. 134, 135; *Williams* v. *Goude*, 1 Hogg. Eccl. 596; *Gardner* v. *Gardner*, 22 Wend., N. Y. 540; *Eckert* v. *Flowry*, 43 Penn. Stat. 51, 52; *Leeper* v. *Taylor*, 47 Ala. 222; *Elliott's Will*, 2 J. J. Marsh, (Ky.) 342.

It is well settled, that the fact of testator's son or son-in-law attending to his *general business affairs* before and after the execution of the will is no evidence of undue influence, even though he is a beneficiary under the will. Not only must undue influence, in order to avoid a will, amount to force or coercion destroying free agency, but it must operate *at the time when the instrument is made.* It must be a *present* constraint operating on the mind of the testator *in the very act* of making the instrument. *Eckert* v. *Flowry*, 43 Pa. St. 51, 52; *McMahon* v. *Ryon*, 20 Pa. St. 331; *Woodward* v. *James*, 3 Strob. (S. C.) L. 553. Undue influence to avoid a will must be exercised *for the purpose* of procuring *it*— the particular will—and must be directly connected with *its execution* and must not be a mere *general inference.* *Woodward* v. *James*, 3 Strob. (S. C.) L. 553; *Tyson* v. *Tyson*, 37 Md. 581; *McCulloch* v. *Campbell*, 49 Ark. 371.

Where as in the case at bar any considerable time has intervened between the execution of a will and the testator's death it is hard to imagine that undue influence could have continued all the while. *Hoshaner* v. *Hoshaner*, 26 Pa. St. 406, 407; *S. P. Mintzer* v. *Baker*, 5 Phila. (Pa.) 458. Where the husband of the principal beneficiary occupied a confidential relation to the testator the court held that undue influence was not established. *Bristed* v. *Weeks*, 5 Redf. (N. Y.) 532.

3. The doctrine of confidential relations adopted in courts of equity as to gifts and contracts *inter vivos*, has no application to the case at bar. *Tyson* v. *Tyson*, 37 Md. 583.

As the testator took the will down to the Bank of Washington himself, he certainly had an opportunity to either read the will himself or to get some one to read it to him; and where a testator has the opportunity of knowing the contents of a will he will be presumed to have availed himself of it. *Webb* v. *Fleming,* 30 Ga. 811, 812; *Hoshaner* v. *Hoshaner,* 26 Pa. St. 406; *Vernon* v. *Kirk,* 30 Pa. St. 224; *S. P. Will of Maxwell,* 8 N. J. Eq. (4 Halst.) 266; *Patton* v. *Hope,* 37 N. J. Eq. 527; *King* v. *Kinsey,* 74 N. C. 263.

4. The court cannot disregard the proof of due execution because of evidence of want of mental capacity, for that is an entirely different matter, and where due execution has been proved the burden of disproving it and of proving that a paper had been imposed upon the testator, the contents of which were unknown to him, lies on the contestant. *Rees* v. *Stille,* 38 Pa. St. 144; *Kirk* v. *Carry,* 54 Pa. St. 286; *Allaire* v. *Allaire,* 37 N. J. L. 317.

5. The record of the will in controversy recorded in the office of the Register of Wills of this District, together with the probate proceedings showing that the same had been admitted to probate by the Supreme Court of the District of Columbia, admitted in evidence under the Act of July 9, 1888, were by the very terms of the act *prima facie* evidence of the due execution of said will.

*Prima facie* evidence which is not rebutted becomes conclusive evidence of the fact, and the jury are bound to so consider it. *Kelly* v. *Jackson,* 6 Peters, 632; *Carver* v. *Astor,* 4 Peters, 82; *U. S.* v. *Wiggins,* 14 Peters, 346.

*Mr. A. S. Worthington* and *Mr. W. L. Cole* for the appellees:

1. Undue influence is nearly always proved by circumstances alone. It is seldom possible, and never necessary, to prove it by witnesses who have seen it exercised in the matter in controversy. *Davis* v. *Calvert,* 5 G. & J. 269; *Moore* v. *McDonald,* 68 Md. 321; *Griffith* v. *Diffendorfer,* 50 Md. 488;

*Beaubien* v. *Cicotte*, 12 Mich. 459; *Rollwagan* v. *Rollwagan*, 63 N. Y. 519.

Some features of the evidence in this case requiring the submission of the question of undue influence to the jury, and rendering impossible any other verdict than that rendered in favor of the plaintiffs, are the following:

(*a*) The will was an unnatural one. A will by which a father gives everything he possessed to a child who is rich, and not a farthing to one who is poor, or to his suffering family, is in the highest degree an unnatural will, and presents a strong case for the application of the rule that where a will on its face is unnatural, repulsive to the commonest instincts of humanity, that fact is of great, perhaps decisive, weight upon the issue of undue influence. *Hiss* v. *Wick*, 28 Atl. Rep. 403 (Md. 1894); *Hammond* v. *Dike*, 42 Minn. 273.

(*b*) The testator was of feeble intellect. Upon the issue of undue influence the leading inquiry is, was the testator a man easily influenced? The evidence in this case demonstrates that, whether the testator had or had not mind enough to enable him to make a valid will, his mind was so weak as to make him an easy victim to any designing persons who may have surrounded him. Much less evidence is required to establish undue influence where the testator is of weak mind than where he has average intelligence. *Reynolds* v. *Adams*, 90 Ill. 146.

(*c*) Fiduciary relations. The case is one in which one who is named in the will as executor, and who, in a certain contingency, is to take practically the entire estate, and to whose wife the bulk of the estate is immediately devised, standing toward the testator in confidential relations of the highest degree, and shown to be capable of exercising his powers as a trustee for his own gain to the destruction of those for whose benefit the trust is created. This is cogent evidence to establish undue influence. In many cases it is held sufficient of itself to cast upon the proponent of a will the burden of establishing that it was not obtained by undue

influence. *Richmond's Appeal*, 59 Conn. 226; *Drake's Appeal*, 45 Conn. 1; *Gay* v. *Gillilan*, 92 Mo. 250; *Garvin's Admr.* v. *Williams*, 44 Mo. 465; *Greenfield's Case*, 2 Harris (Pa.), 489; *Beall* v. *Mann*, 5 Ga. 470; *Boyd* v. *Boyd*, 66 Pa. St. 283; *Moon* v. *Spier*, 80 Ala. 134; *Hartman* v. *Stickler*, 82 Va. 237; *Matter of Blair*, 16 Daily, 544; *Waddington* v. *Buzby*, 43 N. J. Eq. 161, 162; *Banta* v. *Willett*, 6 Demorest, 84; *Bridwell* v. *Swank*, 84 Mo. 468; *Delafield* v. *Parish*, 25 N. Y. 35; *St. Leger's Appeal*, 34 Conn. 436, 439, 450.

Upon the question of undue influence, the mental strength and capacity of the testator is an important consideration. The evidence in this case establishes beyond a reasonable doubt that the testator had not mind enough to make a valid will. The reasonableness of a will itself as applied to the circumstances of the testator is always a matter for consideration in determining the mental condition of any testator. Unreasonableness, conduct contrary to natural expectations and not explained by any circumstance rendering it open to rational understanding, is always an indication of mental deficiency.

2. The prayer upon the question of testamentary capacity, granted on behalf of the plaintiff, by which the jury were instructed that if they found that at the time the will purported to have been executed by the testator " he did not have sufficient mental capacity to know in a general way the extent and value of his property, and who the persons were who were the natural objects of his bounty and their deserts with reference to their conduct towards him and their treatment of him, and what were their relative claims and necessities, and that he did not have sufficient active memory to enable him to retain these facts in his mind in a general way long enough to have his will prepared and executed, they should render a verdict for the plaintiffs," is sustained by all the authorities. *Burkhart* v. *Glodish*, 123 Ind. 342; *Harrison* v. *Bishop*, 131 Ind. 164; 1 Warner's Am. Law of Adm. 30, 31; *Whitney* v. *Twombly*, 136 Mass. 146.

Mr. Chief Justice Alvey delivered the opinion of the Court:

This is an action of ejectment brought by the plaintiffs, David Moore, Frances M. Moore, Mary A. Johnson, Sarah M. Davidson and Josephine M. Bridget, the present appellees, to recover undivided portions of certain parcels of land situate in the District of Columbia, the same being alleged to be in the possession of the defendants, Annie E. Barbour and James L. Barbour, the appellants on this appeal. Both parties, plaintiffs and defendants, claim title from the same source, that is to say, under David Moore, deceased.

The declaration contains two counts, each for different parcels of land; and to this declaration the defendants pleaded separately; and in addition to the general issue plea of not guilty, each defendant has spread upon the record elaborate special pleas, covering many pages of the printed record. This method of pleading in actions of ejectment is quite unusual in practice, and it is by no means to be encouraged. It not only encumbers the record, but is calculated to embarrass the jury in rendering their verdict. There is no possible advantage to be gained by such mode of pleading, and, indeed, it is wholly unnecessary, and it can seldom happen that special pleas are proper. The general issue plea of not guilty denies the whole ground of action, and the only exception to the general rule is a plea to the jurisdiction of the court. As said by Mr. Adams, in speaking of the general issue plea of not guilty, in his work on Ejectment, page 302: "It is not, indeed, easy to imagine a case in which any other plea in bar can be necessary; for, as the claimant must, in the first instance, prove his right, to the possession, whatever operates as a bar to that right must cause him to fail in proving his title, and consequently entitle the defendant to a verdict upon the general issue." The abolition of the fictions, and the common consent rule, formerly in use in the action of ejectment, in no manner restricts the effect of the general issue plea of not guilty.

During the pendency of the appeal in this court, the death of James L. Barbour, the husband, and one of the appellants, has been suggested; and the case now stands in the name of the surviving wife, Annie E. Barbour, as appellant.

The whole contest in the case is over the will of David Moore, deceased. Moore, the testator, died in 1883, leaving surviving him a widow and two children—a son and a daughter. The daughter married James L. Barbour. He left a large and valuable estate, principally land, situate in this District. He left unrevoked what purports to be a last will and testament, bearing date the 29th of January, 1876, and executed in due form to pass real estate. This instrument, shortly after the death of the testator, was duly admitted to probate by the Supreme Court of the District of Columbia, after due notice given to all parties concerned. James F. Moore, the son of the testator, died in 1886, intestate, leaving a widow and five children, his heirs at law. These five children are the plaintiffs in this action, suing as heirs at law of their father; and Annie E. Barbour, the surviving daughter of the testator, is defendant, holding and claiming as devisee under her father's will. After demand made of the defendants of the right to enter the premises, and their refusal, the plaintiffs, the present appellees, instituted this action on the 16th day of June, 1892.

The trial below appears to have been a very protracted one, and it elicited and brought forth an immense volume of facts and circumstances relating to the character, the family relations, the peculiar characteristics, and infirmities of the testator. In the course of the trial, there were many exceptions taken by the defendants, to rulings on questions of evidence; but the principal questions arise upon the rulings upon the prayers offered for instruction, and upon the general charge of the court to the jury. We shall first consider the main questions of the case; and they are—

1. That the will of David Moore was not duly and legally

executed—that the testator did not understand the contents of the will.

2. That the testator did not possess testamentary capacity.

3. That the will was procured by fraud, and undue influence, practiced by James L. Barbour and Annie E., his wife, upon David Moore, the testator.

If either of these grounds of attack upon the will be well supported by evidence, and be so found by the jury, the will is necessarily rendered void, and can furnish no ground of defense to the defendants. The whole question, therefore, turns upon the validity of the will.

1. After proof of the relation of the parties, and what would be the rights of the plaintiffs in the property sued for, in the absence of the will of David Moore, deceased, the plaintiffs rested their case. The defendants then offered in evidence the record of the will and probate thereof, as granted by the Supreme Court of the District of Columbia; and by which will the property in question was devised to Mrs. Annie E. Barbour in fee simple and absolutely; but if she should die without having disposed of the same, by will or otherwise, and without lawful issue living at the time of her death, then to her husband, James L. Barbour, his heirs and assigns.

To the admission of this record of the will and probate, the plaintiffs objected; and the court entertained the objection, and refused to allow the reading in evidence of such record of the will and probate thus offered, and the defendants excepted. But subsequently, during the progress of the trial, and after the defendants had offered evidence of the due execution of the will, the plaintiffs withdrew their objection, and the record of the will and probate was allowed to be read in evidence. The question, however, as to the effect of the record of the will and probate became the subject of instruction to the jury at the close of the evidence;

and that instruction was excepted to by the defendants. By the second prayer offered by the plaintiffs and granted by the court, the jury were instructed that the record of the will and probate was "to be taken as *prima facie* evidence of the due execution of the will by David Moore—that is, that this would be sufficient evidence to establish the fact of the due execution of said instrument by him, in the absence of any countervailing evidence; but that the jury in this connection are to take into consideration all the other facts and circumstances that have been admitted in evidence, bearing upon the question of the execution of said will by David Moore, *and before* the jury can conclude that said paper was duly executed by David Moore, *they must find upon all the evidence in the case* that each of the following facts is established by a fair preponderance of the evidence: 1. That the signature of David Moore at the end of said instrument was written by him; 2. That the three subscribing witnesses each signed the paper in the presence of David Moore, and by his express direction, and that they all attested and subscribed the same in his presence; and, 3. That when said instrument was so signed and attested David Moore intended the same to be his last will and testament and knew and understood the substance of the contents thereof."

From the terms of this instruction, the jury may well have concluded, as doubtless they did, that the whole matter was open to them to find, without reference to the *prima facie* effect of the will and probate in evidence. This they should not have been allowed to do; and to say the least of this instruction, it greatly tended to mislead the jury.

But in the general charge of the court to the jury, the effect of the probate of the will was again adverted to, and pressed upon the jury in these terms: "But as matter of law, gentlemen of the jury, the fact that this will relating to real estate was offered for probate, and that James F. Moore

made no objection to the probate, does not conclude him at all. It is no estoppel as against him. He had the right to make this objection to its validity at any time during his life, which lasted up to 1886 or 1887, and his heirs at law had the right to make the objection to its validity, so far as it affected their rights in the real estate in controversy, at any time within twenty years. The effect of the probate of the will in the Orphans' Court, so far as their rights were concerned in this real estate, *was absolutely nothing.*"

Now, we entirely agree with the court below that the effect and operation of the probate of the will was not to conclude James F. Moore, or his heirs at law, though they did not object to the probate of the will, and that they were still at liberty to contest the validity of the will, as the heirs are now doing. But we cannot agree that the effect of the probate of the will, as to real estate devised, is absolutely nothing, as held by the court below. The will and probate, when produced in evidence, have, by force of the act of Congress, a clear *prima facie* effect and operation to establish the facts of due execution, and the contents of the will.

That this may clearly appear, we will cite the terms of the act of Congress. It is the act of July 9, 1888, Ch. 597, and it provides thus:

" That the record of any will or codicil *heretofore* or hereafter recorded in the office of the Register of Wills of the District of Columbia, which shall have been admitted to probate by the Supreme Court of the District of Columbia, or by the late Orphans' Court of said District, or the record of the transcript of the record and probate of any will or codicil elsewhere, or of any certified copy thereof heretofore or hereafter filed in the office of said Register of Wills shall be *prima facie* evidence of the contents and due execution of such wills and codicils."

The act may be very inartificially framed, but its object and purpose cannot well be mistaken. It is an evidence act, and its main purpose manifestly was to impart to the

probate of all wills and codicils at least a *prima facie* effect and operation as proof, of two matters, that is, of the contents, and of the due execution of the will, or codicil; and thus make the will and probate, of record in the office of register of wills, a muniment of title. If this was not the object, it is difficult to say what the object of the passage of the act really was. Before the passage of this act, the probate of a will in the probate court was without effect as to real estate in this District. That was found to be inconvenient, and attended with difficulties in maintaining titles depending on devises, after the lapse of time and the death of witnesses. Hence this act. *Robertson* v. *Pickrell*, 109 U. S. 608. What may be the effect of the act upon the probate of a will of personal estate, is a question that we need not decide.

Taking then the will and probate as produced in evidence, they made a good *prima facie* case for the defendants, and the burthen was thereby cast upon the plaintiffs of producing satisfactory proof to overcome the case thus made in defense. This should have been clearly stated to the jury. As the matter was expounded to them, there was danger of misapprehension, and it is not at all improbable that the jury failed fully to appreciate and give due weight and proper effect to this record evidence. We are of opinion, therefore, that there was error in the instruction in regard to the effect of the will and probate. And such being the effect of the will and probate as evidence, the presumption thereupon arose that the testator knew and approved of the contents of the paper that he had signed. *Guardhouse* v. *Blackburn*, 1 L. R. P. & D. 109 ; *Billinghurst* v. *Vickers*, 1 Phillim. 191; *Fawcett* v. *Jones*, 3 Phillim. 476. Indeed, this presumption is embraced or involved in the *prima facie* effect given to the probate of the will. And the *onus* of proof having been thus cast upon the plaintiffs, we fail to find in the record any evidence legally sufficient to overcome the *prima facie* effect of the probate of the will, and from which the jury

could find non-execution of the will, or that the testator did not know and understand the contents thereof. We think the jury should have been so instructed.

2. We come next to the question of the want of testamentary capacity of the testator. Whether the testator was capable, at the time of executing the paper purporting to be his will, of making a valid deed or contract, is the question, in all such cases as the present, that must be decided. This is the test prescribed by the Maryland Statute of 1798, Ch. 101, in force in this District. And few questions are attended with greater difficulty. The incapacity alleged must exist at the time of making the will. The proof of incapacity at any prior or subsequent time, while it may furnish evidence reflecting on the condition of the testator's mind at the date of the will, will not relieve the party assailing the will from the necessity of establishing, by clear proof, the existence of the mental incompetency at the time of executing the paper. The right of making a will and disposing of one's property as he pleases, even to gratify partialities or prejudices, and even to the exclusion of those of near and close blood connection with him, is among the dearest and most sacred rights of the citizen, secured by the law; and that right ought not to be impaired or nullified, except upon the most substantial ground. To make a valid will it is not necessary that the testator should be endowed with a high order of intellect, or even an intellect measuring up to the ordinary standards of mankind. Nor is it necessary to the making of a valid will that the party should have a perfect memory, and that his mind should be wholly unimpaired by age, sickness or other infirmities. If the party possess memory and mind enough to know what property he owns and desires to dispose of, and the person or persons to whom he intends to give it, and the manner in which he wishes it applied by such person, and, generally, fully understands his purposes and the business he is engaged in, in so disposing of his property, he is, in contemplation of law, of sound and disposing mind.

In controversies involving questions of testamentary capacity, it is competent, for the purpose of shedding light upon the state of the mind of the testator, at the time of making the will, to produce evidence of the condition of his mind, both before and after the date of the will. The condition of mind may be established by proof of conversations, actions or declarations of the testator, inconsistent with testamentary capacity. But it is not of itself sufficient to avoid a will that the dispositions made by it are imprudent, apparently unnatural, and not to be accounted for. The will, it is true, in an otherwise doubtful case, may, by its provisions, furnish intrinsic evidence, involving it in suspicion, tending to show the incapacity of the testator to make a disposition of his estate, with judgment and understanding, with reference to his estate and his relations to those having natural claims upon his bounty. Such a will, if apparently unnatural, or not consonant to parental affections, would doubtless excite suspicion against it; but it is only a circumstance to be considered with other facts and circumcumstances, and not *per se* sufficient to justify the setting aside the will. *Davis* v. *Calvert*, 5 Gill & John. 269, 301.

In the case just referred to, where the subject was very fully discussed, it was held, that the contents of the will, and the manner in which the paper was written and executed, together with the nature and extent of the estate of the testator; his family and connections; their condition and relative situation to him; the terms upon which he stood with them, and the claims of particular individuals; the condition and relative situation of the legatees or devisees named; the situation of the testator himself, and the circumstances under which the will or testament was made, are all proper to be shown to the jury, and often afford important evidence in the decision of the question of incapacity. These various circumstances, when considered in connection with the provisions of the will, may often furnish ground for a conclusion against its validity; but its provisions, standing alone,

unattended by such circumstances, or not coupled with them, would not be sufficient.

In the charge to the jury, the learned court, after advertising to the facts and stating the questions to be passed upon, called attention to the provisions of the will to be considered by them, in coming to their conclusion, in these terms:

" Upon these questions you are to take into consideration, gentlemen of the jury, as *one important element* either for or against the will, the contents of the will itself, the character of its provisions, the objects of the testator's bounty, *and the reasonableness of the provision or provisions the will makes.* You are also to take into consideration all the circumstances that have been adduced in evidence by the number of witnesses that have been examined in your presence."

This fact of the contents of the will, we think, was put to the jury too broadly, and without sufficient qualification. The jury may have supposed, and most likely did suppose, that they were at liberty, under the instruction, to pass upon the question of the reasonableness of the provisions of the will, and because they thought the will unreasonable, they were therefore justified in finding against its validity. To allow juries this power of condemning a will because its provisions may not accord with their ideas of what is right or reasonable, would, at once, greatly impair, in a most serious way, the invaluable right of the citizen of making a will. Many wills are deemed unreasonable, but it can never be tolerated that they should, for that cause alone, be nullified by the verdicts of juries. Upon this subject, see, as pertinent to this and all similar cases, the cases of *McMasters* v. *Blair,* 29 Pa. St. 304, 305; *Cauffman* v. *Long,* 82 Pa. St. 78, 80; *Means* v. *Means,* 5 Strob. (S. C.) L. 190.

In all other respects, the instructions given by the court, as to the testamentary capacity of the testator, appear to be full and clear, and free from error or ground of complaint.

3. We come now to the question which appears to have been treated as most important in the case, and with respect

to which most of the voluminous evidence was directed, and that is the question of undue influence supposed to have been exercised by James L. Barbour and wife in procuring the will from the testator, David Moore. The question of fraud, as distinguished from undue influence, was eliminated from the case by the instruction of the court; though there is great difficulty, if it be at all possible, to mark with clearness the distinction between that sort of undue influence that will avoid a testamentary act, and actual fraud.

It is not every kind of influence that will avoid a testamentary act; nor will the exercise of an honest and moderate intercession or persuasion vitiate. Provided there be no fraud or deception practiced, the exertion of an honest influence, by persuasion or importunity, is allowable and will not invalidate a will. But a testator should enjoy full liberty and freedom in making his will, and be able to withstand all contradiction and attempted control. Therefore, any degree of importunity or undue influence which deprives the testator of his free agency, and which is such as he is too weak to resist, and in effect renders the instrument not his free and unconstrained act, is sufficient to and will invalidate the will or testatment of the party. *Davis* v. *Calvert, supra; Hall* v. *Hall*, 37 L. J. 40.

The subject has been treated in a great many decisions, and under a great variety of circumstances. Indeed, every case must largely depend upon its own special facts. There are, however, certain general principles that must be kept in view, as guides to a correct conclusion on the facts; and the facts to which these general principles are applicable are as varied as are the circumstances and conditions of mankind itself.

In a leading English case in the House of Lords, that of *Boyse* v. *Rossborough*, 6 Ho. L. Cas. 2, 47, 48, the subject is discussed with remarkable clearness and force by Lord Chancellor Cranworth, in whose opinion the rest of the House concurred. That was a case of a bill filed in equity by the

heir at law to impeach a will of real estate as having been obtained by undue influence or fraud. In the course of the opinion by the Lord Chancellor, he said :

" In order, therefore, to have something to guide us in our inquiries on this very difficult subject, I am prepared to say that influence, in order to be undue within the meaning of any rule of law which would make it sufficient to vitiate a will, must be an influence exercised either by coercion or fraud. In the interpretation, indeed, of these words some latitude must be allowed. In order to come to the conclusion that a will has been obtained by coercion, it is not necessary to establish that actual violence has been used or even threatened. The conduct of a person in vigorous health towards one feeble in body, even though not unsound in mind, may be such as to excite terror and make him execute as his will an instrument which, if he had been free from such influence, he would not have executed. Imaginary terrors may have been created sufficient to deprive him of free agency. A will thus made may possibly be described as obtained by coercion. So as to fraud. If a wife, by falsehood, raises prejudices in the mind of her husband against those who would be the natural objects of his bounty, and by contrivance keeps him from intercourse with his relatives, to the end that these impressions which she knows he had thus formed to their disadvantage may never be removed, such contrivance may, perhaps, be equivalent to positive fraud, and may render invalid any will executed under false impressions thus kept alive. It is, however, extremely difficult to state in the abstract what acts will constitute undue influence in questions of this nature. It is sufficient to say, that allowing a fair latitude of construction, they must range themselves under one or other of these heads— coercion or fraud. One point, however, is beyond dispute, and that is, that where once it has been proved that a will has been executed with due solemnities by a person of competent understanding, and apparently a free agent, the

burthen of proving that it was executed under undue influence is on the party who alleges it. Undue influence cannot be presumed, and, looking to the evidence in the present case, I am unable to discover evidence warranting the conclusion at which the jury arrived, supposing them to have proceeded on the ground of undue influence."

But we have two decisions made by the Supreme Court of the United States upon this subject, in cases going up from this District, that would seem to furnish ample guide and authority for the fair trial of this case. Those cases are *Conley* v. *Nailor*, 118 U. S. 127, 135, and *Mackall* v. *Mackall*, 135 U. S. 167, 172. In the latter of these cases, the court quote with approval the editor's note to the case of *Small* v. *Small*, 4 Greenl. 220, reported in 16 Am. Dec. 259; and we cannot do better than to repeat that quotation here, which is as follows:

"Influence gained by kindness and affection will not be regarded as 'undue' if no imposition or fraud be practiced, even though it induce the testator to make an unequal and unjust disposition of his property in favor of those who have contributed to his comfort and ministered to his wants, if such disposition is voluntarily made. *Matter of Gleespin's Will*, 26 N. J. Eq. 523. . . . Confidential relations existing between the testator and beneficiary do not alone furnish any presumption of undue influence. *Lee* v. *Lee*, 74 N. C. 139. Nor does the fact that the testator on his deathbed was surrounded by beneficiaries in his will. *Bundy* v. *McKnight*, 48 Ind. 502. . . . Nor that the testator, an old and helpless man, made his will in favor of a son who had for years cared for him and attended to his business affairs, his other children having forsaken him. *Elliott's Will*, 2 J. J. Marsh, 340; S. C. Redf. Am. Cas. on Wills, 434, . . . It would be a great reproach to the law if, in its jealous watchfulness over the freedom of testamentary disposition, it should deprive age and infirmity of the kindly

ministrations of affection, or of the power of rewarding those who bestow them.

"Undue influence must destroy free agency. It is well settled that in order to avoid a will on the ground of undue influence, it must appear that the testator's free agency was destroyed, and that his will was overborne by excessive importunity, imposition or fraud, so that the will does not, in fact, express his wishes as to the disposition of his property, but those of the person exercising the influence."

It is unnecessary to discuss the question further, or to cite other authorities. We think the court below committed no error in refusing to instruct the jury that there was no evidence tending to show that the will had been obtained by means of undue influence. There were many facts and circumstances in proof to be considered by the jury, as reflecting upon this question. The court would not have been justified in withdrawing those facts and circumstances from the consideration of the jury. And we think, moreover, that the jury were fully and fairly instructed by the court on the question of undue influence, and the defendant had no good ground of exception in that respect.

4. There is another matter presented by an exception of the defendants that requires notice, and that is the fifth prayer of the plaintiffs, which was granted by the court. By this instruction the jury were informed that the declarations made by the testator, in regard to past transactions were to be considered by them solely as they might throw light upon his *mental condition*, and not as proving or tending to prove the truth of such statements.

That such declarations are not to be taken as evidence of the truth of the statements made, may well be conceded ; but they are to be taken, if believed to have been made by the testator, as representing his beliefs, his feelings, purposes and designs. Whatever may have been the actual truth of the statements, if the matters referred to were made the incentive of his action or determination, he had a right to act

upon them, though mistaken as to their reality or truth, unless it could be shown that they were the mere illusions of his mind.

It seems to be well settled, that the declarations of a testator are admissible to show his intention, if the will be impeached on the ground of fraud, circumvention, or forgery (2 Taylor Ev. 991); and if admitted in such cases, as to intention or purpose, it is difficult to perceive why they should not be received and considered in a case like the present, as showing the motive, feelings, and designs of the testator. *Boyse* v. *Rossborough*, 6 Ho. L. Cas. 54, 55; *Shailer* v. *Bumstead*, 99 Mass. 112, 121. In the instruction given we think the jury may have been mislead as to the way in which the declarations should have been considered by them.

With respect to the several exceptions taken to rulings on questions of the admission or rejection of evidence, without specially referring to each of those exceptions, we think, in what we have said in regard to the main questions in the case, we have sufficiently indicated the proper rulings on those exceptions.

It follows from what we have said that the judgment appealed from must be reversed, and that a new trial be had; and it is so ordered.

*Judgment reversed, and new trial ordered.*

---

On behalf of the appellees, *Mr. Worthington* and *Mr. Cole*, on December 17, 1894, filed a motion to modify the judgment of the court in this case as to costs, for the reasons—

1. That the bill of exceptions, in this case taken and filed by appellant, was not prepared as required by the established rules of practice of this and all other appellate courts, being, instead of a statement of the substance and tendency of the evidence, a transcript of all the testimony, by question and answer, in consequence of which the printed record is extended to 995 pages of printed matter.

2. That the only justification for submitting all the testimony in the case, even if it had been done in proper form instead of by question and answer, was the exceptions taken by the appellant to the rulings of the court predicated upon the entire testimony in the cause, and this court, by its judgment, has decided adversely to the appellant upon those alleged errors and affirmed the rulings of the court below, in so far as they were based upon all the testimony in the case.

3. That a proper bill of exceptions, presenting the rulings of the court for review in this court, could and should have been encompassed within one hundred pages of print, and the questions upon which appellant prevailed could have been presented in ten pages of print:

Wherefore the appellant prays, that the judgment herein as to costs may be so modified by this court that the appellees be charged with only such proportion of the printing as would be sufficient to cover, not to exceed, one hundred printed pages.

On the 10th day of January, A. D. 1895, the court passed the following order:

Upon consideration of the appellee's motion to modify the judgment as to costs in this cause, it is now here ordered and adjudged that said motion be, and the same is hereby, granted, and that the judgment heretofore entered in regard to costs be modified so that the cost of the transcript sent to this court and the printing thereof be equally divided, and that the parties appellants and appellees pay each the one-half of said cost of transcript and printing, and that the same be taxed accordingly.