**Lillian C. FRANKLIN, Appellant,**

v.

**John W. PHOENIX, Appellee.**

No. 6252.

District of Columbia Court of Appeals.

Argued June 5, 1972.

Decided Aug. 25, 1972.

Robert A. Harris, Washington, D. C., for appellant.

John W. Phoenix, appellee pro se. No brief filed and no appearance in court.

Before KELLY and FICKLING, Associate Judges, and HOOD, Chief Judge, Retired.

KELLY, Associate Judge:

Appellee and his wife filed a suit for possession of real property in the Landlord and Tenant Branch of the Superior Court, to which appellant responded in defense that she had received no notice to quit the premises, was not a tenant, and owed no rent. As appellant claimed title to the property in question, the case was moved to the Civil Division for trial pursuant to Landlord and Tenant Rule 5(c).[1] Although the trial court, sitting without a jury, found appellant to be a tenant, it held that she had not received adequate notice to vacate the premises and, accordingly, entered judgment in her favor in the possessory action.[2] It dismissed the plea of title, concluding that appellant had not acquired, individually or jointly, a legal or equitable title to the property. We affirm.

The house in question was purchased in 1958 at a time when appellant and appellee had a continuing romantic relationship appellant having given birth to appellee's child several years earlier. Although appellee was married to another woman he was not living with his wife. As appellant was anxious to find new living quarters for herself and the child, when appellee learned that the property was for sale, both he and appellant looked at the house and discussed the terms of the purchase with the realtor who was handling the property. According to appellant, one of the important considerations during nego-

1. 5(c) *Plea of Title.* A defendant desiring to interpose a plea of title must file such plea in writing, under oath, accompanied by a certification that it is filed in good faith and not for the purpose of delay and must also file an application for an undertaking or for waiver of undertaking, the form and amount of any such undertaking to be approved by the court. Upon such approval by the court, the undertaking shall be filed within four days thereafter and the case shall be certified to the Civil Division for trial on an expedited basis. . . .

2. We refrain from comment on this aspect of the court's ruling since it is not before us on appeal.

tiations with the realtor was that the monthly payments be kept down to $75 a month, the same amount she was then paying in rent. Appellee made a $1,500 down payment and took title, naming himself and his mother as owners of the property on the deed,[3] and appellant moved into the house. Each month appellant sent appellee $75 which was equal to the monthly payments on a first and second trust. Appellee, who was the sole obligor on the notes, made the trust payments, and he also paid all taxes on the property. Appellant paid for repairs and utilities. Major repairs were made on the premises in 1967 when appellant obtained an FHA loan[4] of $1,500 for improvements and in 1971 when she spent $285 to fix the roof.

Appellee's uncontradicted testimony was that appellant paid the $75 a month continuously from 1958 to 1966, when she had a disagreement with appellee over the custody of their child, who was then living with appellee's mother. She took the child and stopped her payments. In 1968 appellee regained custody through court action and appellant resumed her monthly payments.

Over the years the relationship between appellee and appellant deteriorated. In 1967 appellee divorced his wife and shortly thereafter married another woman. Before that time he had told appellant that he would put her name on the deed but "subsequent to that we had a lot of incriminations and her attitude changed . . . I changed my mind about it because of her attitude. But at the time I made the statement I did intend to put her name on it and I told her so, that I would put her name on the deed."[5]

Understandably, ill feelings arose between appellant and appellee's new wife. In 1970, appellant was told to increase her monthly payments to $80. She made one or two $80 payments but, in March of 1971, stopped paying altogether, precipitating the suit for possession.

Following the hearing, the trial court specifically found that at the time of purchase it was agreed that appellant would live in the property and pay rent to appellee of $75 per month; that between that time and 1966 there was some discussion about transferring the property to appellant, and that in 1966 he told appellant "I am going to put the house in your name." Recognizing the settled rule that "equity protects a parol gift of land, equally with a parol agreement to sell it, if accompanied by possession, and the donee, induced by the promise to give it, has made valuable improvements on the property",[6] the court nevertheless concluded that more was required to establish such a gift in this case than some vague statements by appellee that he was going to put the house in appellant's name. The court reasoned that "[t]he fact that the plaintiff let the defendant stay in the house at a rental not exceeding the payments on the notes is not necessarily evidence to show an intention to make a gift of the property. Also, the fact that the defendant made repairs is not an unusual provision in a rental agreement between landlord and tenant, and particularly in a case like this where the tenant's rental payments were no more than enough to pay the notes on the property." Moreover, it is clear from the record that appellant never indicated she undertook to repair the property in reliance upon appel-

3. Appellant had moved before trial to have appellee's wife dropped from the suit because she was not a real party in interest, and to add appellee's mother as a party plaintiff. The court ordered that the wife be dropped from the suit but denied appellant's motion to add the mother.

4. Appellee cosigned the FHA loan agreement.

5. Tr. at 22.

6. Neale v. Neale, 76 U.S. (9 Wall.) 1, 19 L.Ed. 590, 592 (1870). See also Mackall v. Mackall, 135 U.S. 167, 10 S.Ct. 705, 34 L.Ed. 84 (1890); Brown v. Sutton, 129 U.S. 238, 9 S.Ct. 273, 32 L.Ed. 664 (1889); 38 C.J.S. Gifts § 57b (1943).

lee's alleged promise to convey title to her and, significantly, that the major repair contract was performed at a time when, according to appellee, appellant was making no monthly payments at all.

After review of the entire record we are unable to say that the ruling of the trial court is plainly wrong or without evidence to support it.[7]   Accordingly, the judgment appealed from is

Affirmed.

---

7.  D.C.Code 1967, § 17–305 (Supp. V, 1972).