# W. W. McDowell

## *v.*

# William Lucas *et al.*

*Filed at Mt. Vernon February 3, 1881.*

1. SPECIFIC PERFORMANCE—*statute of frauds—of verbal contract of father to his son.* Where a son makes payment of the purchase money of land by four or five years labor which he rendered to his father after he was of age, followed by an actual possession of the premises, and the making of lasting and valuable improvements thereon, under and in pursuance of a verbal contract with his father to convey the title, to take effect at the father's death, a court of equity will decree a specific performance of the contract, when these facts are clearly shown, and these facts will take the contract out of the Statute of Frauds.

2. SALE—*when payment of rent to vendor is not inconsistent with sale.* Where a father contracts to sell to his son a tract of land for past services after the son's majority, and it is a part of the contract that the son shall pay his father rent during the life of the latter, after which the title is to become absolute, and the father is to pay the taxes until his death, the payment of rent by the son will not make him a tenant of the father, and such facts will not defeat the contract of sale.

3. POSSESSION—*notice of occupant's equities.* The actual possession of land, under claim of ownership, is notice of all the equities of the occupant, as against a purchaser from another.

WRIT OF ERROR to the Circuit Court of Wabash county; the Hon. TAZEWELL B. TANNER, Judge, presiding.

Mr. S. Z. LANDES, for the plaintiff in error:

The complainant has a *prima facie* case, and has interposed the Statute of Frauds against the claim of William Lucas, and it is believed the competent testimony in the record does not take the case out of the statute.

The testimony of William Lucas in his own behalf ought not to be considered, for the reason that he is incompetent to testify in this case. Rev. Stat. 1880, chap. 51, sec. 2; *Stone v. Cook,* 79 Ill. 427; *Crane v. Crane,* 81 id. 166; *Marshall v. Peck,* 91 id. 187.

To take a case out of the Statute of Frauds, a contract to convey should be clear and certain in its terms, and established by testimony of an undoubted character, which is clear, definite and unequivocal. *Langston* v. *Bates,* 84 Ill. 524; *Worth* v. *Worth,* id. 443.

The failure to pay taxes, and the payment of rent, throw so much doubt and uncertainty on the case made by the complainant that it is no part of the duty of the court to decree a specific performance of the alleged agreement to convey. *Worth* v. *Worth,* 84 Ill. 442.

It appears that Fielding Lucas, in pursuance of the alleged promise, made his will in due form of law. This speaks his intention incontrovertibly. *Kurtz* v. *Hibner,* 55 Ill. 514.

Messrs. BELL & GREEN, for the defendant in error:

The decree of the circuit court is warranted, and was properly rendered on the cross-bill of the defendant.

The payment of the purchase money, the taking of possession, and the making of valuable and lasting improvements, in pursuance of a verbal agreement to convey, is sufficient to take the case out of the Statute of Frauds. *Thornton* v. *Heirs of Henry,* 2 Scam. 219; *Updyke* v. *Armstrong,* 3 id. 564; *Shirley* v. *Spencer,* 4 Gilm. 583; *Stevens* v. *Wheeler,* 25 Ill. 300; *Mason* v. *Blair,* 33 Ill. 195; *Keys* v. *Test,* 33 id. 316.

A parol promise by a father to his son, to convey him a tract of land, if he would take possession and improve it, will be enforced, if he enters and expends money. *Bright* v. *Bright,* 41 Ill. 97; *Kurtz et al.* v. *Hibner et al.* 55 id. 514; *Langston* v. *Bates et al.* 84 id. 524.

The plaintiff in error is not a *bona fide* purchaser of an interest in the land, without notice of the equities of the defendant, for the latter was in possession, claiming to be the absolute owner when the former obtained the conveyances from two of the heirs of Fielding Lucas; and such possession was notice of the equities of the defendant. *Keys* v. *Test,* 33 Ill. 216; *Truesdale* v. *Ford,* 37 id. 210; *Reeves* v. *Ayers,* 38

id. 418; *De Wolf* v. *Pratt,* 42 id. 200; *Warren* v. *Richmond,* 53 id. 52.

Mr. Justice Craig delivered the opinion of the Court:

This was a petition, brought by W. W. McDowell, in the circuit court of Wabash county, against William Lucas and others, heirs at law of Fielding Lucas, deceased, for the partition of a certain tract of land, consisting of forty acres, of which Fielding Lucas died seized, on the 25th day of November, 1875.

It appears, from the record, that Fielding Lucas left him surviving six children,—Robert, William, Susan, Polly, Martin Lucas and Mary Ann Jones, and a widow, Catharine Lucas; that at the time of his death, he owned one hundred and sixty acres of land in Wabash county, forty acres of which was in the possession of and claimed by William Lucas.

The petitioner obtained deeds from Mary Ann Jones and Robert Lucas, and the widow, Catharine, of all their interest in the quarter section of land, and filed this petition for the purpose of obtaining a decree to a part, and divide the forty acre tract which was in the possession of William Lucas. An answer to the petition was filed by William Lucas, and he also filed a cross-bill, in which he alleged, in substance, that he had purchased the land from Fielding Lucas in his lifetime, and paid for the same in labor; that he had been in the possession for a long time, and made lasting and valuable improvements.

It is also alleged that Fielding Lucas, having been paid for the land, went to Mt. Carmel and had a will drawn and executed, by which he intended and supposed he was conveying the land to complainant in cross-bill, and would have done so but for a mistake in the will, all of which was known to the petitioner.

To the cross-bill the petitioner interposed an answer, in which he denied the allegations therein which were inconsis-

tent with the allegations of the original petition, and set up the Statute of Frauds as a bar to the relief prayed for in the cross-bill. A replication having been filed, a hearing was had on the proofs taken, and the court denied the relief prayed in the petition, and rendered a decree in favor of William Lucas as prayed for in the cross-bill.

It is contended that the testimony of William Lucas in his own behalf ought not to be considered, for the reason that he is incompetent to testify in the case. We shall not stop to consider the question whether William Lucas is or is not a competent witness, for the reason that there is in the record abundant evidence to sustain the decree, to which there can be no objection, aside from the testimony of William Lucas.

It appears, from the testimony, that William Lucas had worked for his father four or five years after he was of age, and that, in consideration of the labor thus rendered, the father agreed to give him the forty acres of land. Under and in pursuance of this agreement, William Lucas went into the actual possession of the land and made lasting and valuable improvements thereon, built a dwelling house, stable, chicken house, smoke house, etc.

Robert Lucas, a witness who had no interest whatever in the result of the suit, among other things, testified : " I heard my father say to William Lucas that he should have that forty acre tract of land at his death, and William said to him he thought he had worked long enough for him, and that he ought to have something, and the old man said that he should have that land, and he would fix it so that he should have it at his death. This conversation was before William took possession. After that, I heard my father was wanting William to build on the forty acres. William told him he did'nt feel disposed to build unless he had some security for the land, and he told William that he would go to town and will him the land. * * * William and my father then went to town, and after that William went on and made the improvements."

Green B. Hodge, another witness, testified: "I am acquainted with the land William lived on. He had lived on the land three or four years before his father died. Fielding told me that he thought William was entitled to the land on which he lived, for his services. About two years before he died, I dug a well, and Fielding told me that I would have to look to William for pay. * * * Fielding told me that the forty acres was William's, and that he had told William to go on and improve it. * * * William would not have gone on the land unless his father had promised to give him the title; would not have made the improvements without such understanding."

The testimony of these two witnesses is not contradicted by any other evidence in the record, and if the facts which they relate are true, their evidence, aided by the other proof, is ample to take the case out of the operation of the Statute of Frauds.

Here was a payment of the purchase money by four or five years' labor, which the son rendered to the father after he was of age, followed by an actual possession of the premises and the making of lasting and valuable improvements thereon, under and in pursuance of a verbal contract to convey the title. The concurrence of these things when clearly established has always been regarded as sufficient to authorize a court of equity to decree a conveyance. *Bright* v. *Bright*, 41 Ill. 97; *Kurtz* v. *Hibner*, 55 id. 514; *Langston* v. *Bates*, 84 id. 524.

The fact that William Lucas paid his father one-third of the crops each year raised on the land, and the latter paid the taxes, does not militate against his right to a decree. Had the payment of rent been unexplained, a different question would have arisen, but it appears, from the testimony, to have been a part of the contract, that one-third of the crops should go to the father during his life, and he was to pay the taxes, and at his death, the absolute title should vest in the son. The payment of rent, therefore, in this case, does

not establish the relation of landlord and tenant between the parties and tend to prove that William Lucas was not occupying as a purchaser, but, on the other hand, the payment of rent was consistent with the contract under which William Lucas entered into possession of the land.

When plaintiff in error purchased from two of the heirs, William Lucas was in the actual possession of the premises, claiming to be the owner. Such possession was notice of all the equities that William Lucas had in the premises, and plaintiff in error can not be regarded as an innocent purchaser, but his purchase was subject to the rights of William Lucas in the premises.

We are of opinion that the decree of the circuit court was correct, and it will be affirmed.

*Decree affirmed.*