(Ashtabula Co., O., Common Pleas.)
February, 1898.

FRANCIS COOPER et al.   v.   JOHN T. COOPER et al.

(1). The bringing an action upon a verbal contract for the sale of land, is prohibited by the statute of frauds; but the parties are permitted, as between themselves, to make and perform such contracts, and each is protected in his right to property so acquired—parties entering upon the performance of such a contract, must rely upon the good faith of each other, for its completion. Its complete performance therefore becomes a question of conscience and honor between them.

(2). When charged in the petition that one of the parties refuses to complete such a contract after he has induced the other to so far perform it by such inducement that his refusal, amounts to a breach of faith, and operates as a fraud upon the party performing—a court of equity will examine the whole transaction—follow the charge of fraud back of, and through the letter of the statute—ascertain the equities and rights of the parties, and in compliance with its rules, render such a decree as equity and good conscience require.

(3). In such a case, equity bases its jurisdiction, upon the fraud charged, and not upon the verbal contract as a contract.

(4). In an action based upon such a charge, where justice and equity require it, a court of equity will decree specific performance of the verbal contract—not to enforce the contract as a contract, but as affording the only adequate relief for the fraud.

(5). It is stipulated in the verbal contract in this case, that the nephew should board, and care for the uncle and give him a home in the nephew's family on the farm, during the life of the uncle; there is no stipulation in the contract requiring the nephew to make any improvements on the farm. Held, that in a suit at law, against the uncle for damages for failure to perform the verbal contract, the nephew could recover only the value of the board and home furnished, and services rendered; that he could not recover for the improvements he made on the farm; he is therefore without an adequate remedy at law in this case.

HOWLAND, J.

The plaintiffs bring this action in partition, and aver in their petition, that John Cooper, deceased, was their brother; that he died intestate, seized in fee of all the lands described therein; that said lands descended to them and this defendant, upon the decease of John Cooper.

The defendant John J. Cooper, admits that these parties are the heirs of the deceased John Cooper, as stated, and that he died intestate, and sets up in his answer an equitable title in himself by purchase from the deceased.

It is admitted that Joseph Cooper was the father of the deceased—that he owned, improved and lived upon the land described, for many years, and there died in 1883, seized of the title in fee to all of the lands described—leaving his widow, Grace Cooper, in full possession; that she, and the deceased son John, lived on said lands by themselves for ten years; when the mother died January 29th, 1893. The deceased under whom the plaintiff claims, was the uncle of this answering defendant; he never married and at the death of the mother was seventy years old. He continued to live on said land for about one year after the mother's death, by himself—during that time he purchased of the plaintiffs for $5000, their entire interest, as the heirs of Joseph Cooper, in and to all of said land—paid them in full, and received their deed therefor.

The defendant denies that his uncle was the owner of said premises at his death, and avers in his cross-petition, that during the first year, after the death of the mother of the decedent, his uncle proposed to him, that he would give said farm to this defendant if he would move on to, and take possession of it, and there board and give him a home in the family of this defendant, during the balance of the uncle's life; that this defendant accepted said proposition; that after the uncle bought out the heirs, and on the 5th day of January, 1894, the uncle then said to this defendant, that if he would move onto the farm and take care of him as they had talked, that he would give the farm to this defendant and would deed it to him; that he had other property with which he would clothe himself—that all he wanted was a home and his board; that no other place would seem like home to him; that he wanted to live with this defendant the rest of his life on the farm; that this defendant again accepted said proposition; that on the next day, January 9th, 1894, by request of the uncle, under and in compliance with said contract, he moved with his family into the dwelling-house and on to the said farm, and then with the approval and request of the uncle took the entire possession thereof, including all three tracts described in the petition; and from that day until the death of the uncle, April 4th, 1896, this defendant continued to hold the exclusive possession of said premises during all that time and furnished his uncle a good home in his family, on said premises—rendered him all proper care—did his washing and mending—boarded him and performed all the conditions of said agreement to be by him performed, relying upon he full performance of said contract and promise of the uncle to convey the title of said premises to him. This defendant at his own expense, with the knowledge of his uncle, commenced to make valuable improvements upon said farm soon after he took possession, and continued to make permanent and valuable improvements upon said premises, with the approval of the uncle during his life, in repairing the house, repairing and building over the barns; building and repairing fences; under-draining, ditching and reclaiming the low wet lands; clearing out the creek; supplying water on one of the tracks through a drain from a spring upon another tract; that said improvements were worth the sum of $667,42; that he thereby became the owner of the equitable title of all of said lands and entitled to a conveyance thereof; that his uncle neglected to convey the legal title to him, and he therefore asks a conveyance thereof decreed to him by this court.

The plaintiffs contest this claim on three grounds:

First they deny the making of the contract.

Second, that the contract is void under the statute of frauds if one was made.

Third, that the defendant has an adequate remedy at law.

The burden upon both grounds is upon the defendant to prove clearly the allegations of his cross-petition.

He will not be entitled to a finding, by proving that a verbal contract was made—he must go further and prove clearly all the facts required by law to take this case out of the operation of the statute of frauds.

The defendant has called twenty-four witnesses, who have testified in this case. The plaintiff has called six.

The case has been ably argued and submitted. We cannot refer at length to the testimony of all of these witnesses, without rendering our opinion too voluminous.

It is admitted that the uncle purchased the interest of the plaintiffs, as the heirs of their father Joseph Cooper, in all of said lands about the first day of January, 1894. That his age was then seventy years. Is it probable that he purchased their interest and paid them $5000, therefor, that the title to said land might return to them in a few years by descent? When the uncle made the purchase he was a bachelor, living alone on said farm—needing the care, company and assistance of some one to live with, and board him; he would naturally prefer a friendly nephew to a stranger. We are unable to account for the change in the situation of the nephew and his sudden abandonment of his employment in the mill at Ashtabula on the same day that he claimed he there made the contract with the uncle testified to by the witness Warren, and for the number of and expensive improvements made by the nephew upon the farm to improve the estate permanently which are not stipulated for in the contract, and for other acts and relations which it has been clearly proved existed between these parties in relation to this farm, from the time

the nephew moved on to it, until the death of the uncle, upon any other basis than that the verbal contract alleged in the petition was made and agreed upon by and between the uncle and this defendant, as alleged in the cross-petition. Birdsell v. Birdsell, 52 Wis. 208; Brown's Stat. of Frauds sects. 480 to 488 inclusive; Cumins v. Nutt, Wright's Reports, 713; Shahan v. Swan, 48 Ohio St., 25. When we consider these facts together with all of the evidence in this case, we find that it has been clearly proven that the deceased uncle and this nephew, on the 8th day of January, 1894, in the office of the planing mill in the city of Ashtabula, did make and enter into the verbal contract set up in the cross-petition, in the presence and hearing of the witness Frank Warren; that by the terms of the contract then made, the uncle promised the nephew that if the nephew would move on to his farm with his family, and give or make him a home there, and board and care for him so long as he lived, that he would give him his farm, and convey it to him by deed; that the nephew then accepted said proposition, and by request of the uncle and in part performance of the contract the nephew moved on to the farm the next day, has lived there ever since; that the uncle lived there with, was boarded by and cared for by the nephew until his death on April 4th, 1896, and during that time has made the permanent and valuable improvements upon the farm alleged. Brown's Statutes of Frauds, secs. 478 to 488 inclusive, and 490 Cumins v. Nutt, Wright's O. Reports, 713; Parkhard v. Courtland, 14 John, 15.

The plaintiff contends that the contract being verbal is void under section 4199, Revised Statutes, which is one of the sections of the statute of frauds. So far as applicable to this case it reads as follows: "No action shall be brought whereby to charge the defendant—upon any contract or sale of land, tenement or hereditament, or any interest in or concerning them, unless the agreement upon which such action is brought, or some memorandum or note thereof is in writing, and

signed by the party to be charged therewith". The purpose of this statute is stated in its title—it is to prevent frauds and perjuries—it was enacted to establish a rule of evidene, by which to defeat claims upon pretended verbal contracts, which in fact were never made, rather than to defeat such contracts which were in fact made in good faith. Heaton v. Eldridge, 56 Ohio St. 87, opinion 100 to end; Brown Statute of Frauds, sec. 136, note; Townsend v. Hargayroae, 118 Mon. 326; Pritchard v. Norton, 106 U. S. 127, Bock 27-104. It refuses the right of action upon the verbal contract, and thereby prevents fraud and perjury by removing all possibility of either. The statute does not in terms, render the verbal contract void—verbal contracts for the sale of land, may therefore be made, and the parties enter upon their performance, and if fully performed by both parties, the law will protect each in his title and rights so acquired. Wood v. Dilley, 11 Ohio, 453; Brown's Statute of Frauds, sec. 116; Stone v. Dennison, 10 Pick. 1; Minns. v. Morse, 15 Ohio, 568. In an attempt to perform a verbal contract in opposition to the express provisions of this statute, equities often arise between the parties, which are as binding in conscience—but not in law, as they could be if the contract was in writing. However great the equities may be growing out of a part, or full performance of the verbal contract, for the sale of lands, by one of the parties, this statute prohibits an action upon the contract to enforce it as a contract in equity and at law. Finch v. Finch, 10 Ohio St., 501; Glass v. Hurlbut, 102 Mass., 25; Wheeler v. Reynolds, 66, N. Y., 227; Carbell v. Marsh, 38 Ohio St., cpin., 338 Guest v. Clark, 54 Ohio St. 298.

It is only where the part performance by one party was induced by the other, under such circumstances and to such an extent that a refusal by the party inducing the part performance, to complete the contract amounts to a breach of faith and will operate as an actual or constructive fraud, upon the party performing, and leave him without adequate remedy at law, that a court of equity will take jurisdiction of the case and decree compensation, or a specific performance. In such cases equity bases its jurisdiction not upon the verbal contract —but upon the fraud—actual or constructive, practiced by one party upon the other, by inducing him to perform the contract to such an extent, that by his refusal to complete it, he has gained an unconscienable advantage over the party performing. Armstrong v. Marsh, 38 Ohio St., opin., 338; Story's Equity. secs. 759 to 762 inclusive. Mackall v. Mackall, 135 U. S. 167, Book 34-84.

The facts upon which the fraud— actual or constructive—arises, must be averred with precision, and clearly proved, to give the court jurisdiction in this class of cases. When its jurisdiction has been so established, equity will follow the fraud back of the statute, through its letter, into the equities of the case—search the whole transaction—ascertain the equities and rights of the parties, and in compliance with its rules render such a decree as equity and good conscience require. Equity looks to the spirit and purpose of the statute and construes it in harmony therewith. It does not attempt to enforce the verbal contract, as a legal contract; its purpose is to prevent fraud, which it does, by enforcing and protecting the equities and rights of the parties, arising out of an attempt by them to complete the contract, and a refusal by one party after he has induced the other to partly or fully perform. Each party is thereby prevented from using the letter of the statute to legalize fraud, and a remedy is supplied for a wrong, where otherwise there would be none.

We find it has been clearly proved:

First: That the lands in controversy were all bought, occupied and worked together, by the uncle as one farm, and had been so occupied and worked for many years, by him, prior to the date of the verbal contract. That when the uncle used the word "farm" or "his farm"—in his talk with the nephew and the witnesses and in the verbal contract, he meant

thereby and the nephew understood, that all thee tracts described in the petition were included in that word; that in pursuance of that understanding, the nephew moved on to, has occupied and worked all three tracts together, as cne farm, ever since and is still so working and occupying them under the verbal contract. Myers v. Croswell, 45 Ohio St., 543; Randall v. Turner, 17 Ohio St., 262; Towsley v. Moore, 30 Ohio St., 134.

Second: That the nephew paid all the taxes levied on said farm, upon and since the date of the contract, with the knowledge and consent of the nucle, as the owner thereof. Christy v. Burnhart, 14 Pa. S. T., 260; Brown's Statute of Frauds, secs.——.

Third: That the nephew in part performance of said contract, moved with his family on to said farm, on the 9th day of January, 1894, and has lived there ever since, and is still living there under said contract; that he gave the uncle a home there in his family, boarded and cared for him, until the death of the uncle on April 4th, 1896, and that he has fully performed all the conditions of said contract, to be by him performed.

Fourth: That the uncle was satisfied with, and accepted the performance by the nephew, as being a full performance of said contract by him, and was ready to, and would have conveyed said farm by deed to the nephew, if his life had been prolonged a few hours. Swain v. Seamens, 76 U. S., 254; Book 19, 554. Brown's Statute of Frauds, sec. 463; Story Equ. last par. sec. 759; Swain v. Seamens, 9 Wall 1; Book 19, 554. The witness Williams testifies that the uncle said to him at his milk depot in June, 1895, "Johnnie is getting along first rate--every thing is satisfactory--he is fixing up the farm, and I am well satisfied—well satisfied."

Dr. Sutherland testifies, that in November, 1895, the uncle said to him, he had given his nephew his farm for taking care of him, and he was not sorry for it either.

J. H. Harvey testifies that the uncle said to him in the fall of 1895, he had given his farm to Johnnie, and

was going to live with him the balance of his life; that he had money to buy his clothes and tobacco and did not think it necessary to work as hard as he had done".

Dr. Siegfried testifies, "that he is a physician—was called to and did visit the uncle professionally on the day and day before he died; found him suffering with double pneumonia—told him to go to bed—that I considered his case serious—that if he had any business to attend to, he had better do it—he said ".There was a matter with Johnnie in regard to the place, that ought to have been done long ago. that he regretted very much that he had not done it." I called the next day in the afternoon—there was some talk about Johnnie's matters, he said "he was going to attend to that matter that day, "he was speaking of that matter of Johnnie's in regard to the place—on my return back from Saybrook they called me in—I found him much worse, while I was there a notary public came in with some papers and had just got started when the old gentleman passed away. Randall v. Turner, 17 Ohio St., 262; Towsley v. Moore, 30 Ohic St., 184; Brown's Statute of Frauds, sec. 119. Though full performance by the nephew is proven by the foregoing facts. But if the facts do not establish legal or constructive fraud, then this cause of action is not taken out of the operation of the statute and is prohibited by the statute. Carbell v. Marsh, 38 Ohio St., opin., 338; Reinheimer v. Carter, 31 Ohio St., 579; Wheeler v. Reynolds, 66 N. Y., 227; Finch v. Finch, 10 Ohio St., 501; Story's Equ., sec. 1522.

Fifth: We find that if this verbal contract had been reduced to writing and signed by the parties a court of law would enforce it. Emory v. Darling, 50 Ohio St., 160; Bigelow v. Armes, 108 U. S., 10 Book 27, 631.

Sixth: That during the time the uncle lived with the nephew on the farm, the nephew relying upon a full performance of the contract by both parties, and with the knowledge and approval of the uncle, repaired, sided over new and painted the large barn—

raised up the horse barn, built a stone wall under it and sealed it on the inside—repaired and papered the house —repaired the chimneys; laid over old and built the new fences, reclaimed the low wet lands by under-draining them — put down 180 rods of tile drain—cleaned out the creek—dug a ditch from a spring on one tract of said land to another and tiled the same, by which water was supplied on one tract from a spring on another—that all of said improvements were made by the defendant at his own expense and for his own benefit, as owner of the premises; that the uncle neglected to make the deed until he was disabled by death from doing it. 43 N. Y., 34, Brown's Statute of Frauds, sec. 487; R. R. Co. v. McAlpine, 129 U. S., 305, Book 32, 673.

Seventh: That the nephew was not a tenant; that his possession was not joint with the uncle; that the uncle did some light work—sold some timber and some stone, which the purchaser gathered in part and hauled from the north pasture; that these acts were not done in opposition to the nephew, but with his approval; prompted by his habits of a life of industry, and the unrest and uneasiness which idleness brought upon him —that the presence of the uncle on the farm, making his home in the family of the nephew as a boarder, did not affect or defeat the otherwise exclusive possession of the nephew. Warren v. Warren, 105 Ill., 566; McDowell v. Lucas, 97 Ill., 489; Dumm v. Stephens, 94 Ind., 181; McClure v. Otrich, 188 Ill., 320; 6 West Report, 65; Brown v J. Sutton, 129 U. S., 238; 43 N. Y., 34.

Eighth: That it has been proved that the uncle gave and the nephew took the full and entire possession of all of the land described in the petition, under and in part performance of the verbal contract, and has so continued in the open, notorious and exclusive possession thereof, under said contract, ever since, and now is so in possession. Neale v. Neale, 9 Wal. 1 Book 19, 590; Brown Stat. Frauds, secs. 472, 478 and 481; Lester v. Foxcroft, 1 Leading Cases in Equ., 625.

This eighth finding is based in part only, upon the acts and conduct of the parties, and declarations of the uncle before and after making the contract, to some of which we here and now refer. The uncle said in substance to the witnesses Wilkinson, Richmond, and Gibbs, that he wanted to buy the farm for Johnnie; that he did buy it for him; that he did not calculate to do any more work; he said to the witness, Williams, on the day he made the contract, after he made it, on his way home, "that he had given his farm to Johnnie for his board and care"— He repeated this statement in substantially the same language to many of his neighbors, at different times, from that day until his death. These declarations tend to prove that the uncle intended to and thought he had given Johnnie the farm, at the time he made the contract, in which instead of reserving for a home certain parts of the house, or rooms therein, or reserving possession of the whole or any part of his farm, he stipulated in the contract that Johnnie should *give and make him a home on the farm during his life.* Under that stipulation in the contract, he yielded to the nephew, and the nephew took the full and exclusive possession of the whole farm under and in part performance of the verbal contract, when he moved on to it, the next day after the contract was made.

We find as matter of law, that after the defendant had been given possession of said farm by the uncle, under said contract, and he had commenced making the improvements which we have hereinbefore found he did make, with the intention to fully perform the contract on his part, with the knowledge and approval of the uncle; that he thereby acquired an equitable interest in the whole of said farm; that he could not be divested of that interest, except by a contract in writing signed by the parties, or by the same means, by which he had acquired that interest. Kelly v. Stanbury, 13 Ohio, 408. That equitable interest increased in amount and value, as the performance of the contract, by the nephew, progressed, which we find was

continued to, and completed at the death of the uncle. The nephew thereby paid the contract price for the farm in the services rendered, as stipulated in the contract. The uncle's death terminated the contract and left the nephew in the exclusive possession of the farm, under the contract and of his suitable interest in it, growing out of a full performance of the contract on his part. At the death of the uncle the legal title to the farm passed to and vested in his heirs, charged with the equitable interest of the nephew in it.

The question to be here determined is whether the farm shall be ordered partitioned among the heirs, as the owners in fee, or the heirs shall be ordered to quit-claim their interest in it to the nephew? This question can be solved only by applying the rules of law heretofore stated to the facts we have found have been clearly proven. It is urged that the defendant has a plain and adequate remedy at law, in a suit for damages for breach of the contract.

Atkinson v. Pick Co., 1 Ohio, 375; Critchfield v. Porter, 3 Ohio, 519; McWharton v. Armstrong, 18 Ohio, 188, c. A. etc. Ency., 692.

In such an action at law, this defendant would be limited in his claim to the home and board which he furnished the uncle and the services rendered him, they being the only items which it is stipulated in the contract he should furnish, or do, to perform fully the contract on his part. Welsh v. Welsh, 5 Ohio, 425; Wells v. Bannister, 4 Mass., 514; Brown's Stat. Frauds, sec. 119.

The permanent improvements to the farm, which we have found it has been proven were made by the nephew for his own benefit, and at his expense, are not stipulated for in the contract, and were not requested by the uncle. This defendant could not claim anything for them in an action at law. Cook v. Doggett, 2 Allen, Mass., 439; Weller v. Toby, 41 N. H., 88; Farnham v. Davis, 32 N. H., 302; Wells v. Bannister, 4 Mass., 514; Gillett v. Maynard, 5 John, 85; Kemble v.

Dresser, 1 Metc., 271. Brown Statute of Frauds, sec. 119.

This defendant therefore has no adequate remedy at law. Hartford v. Chapin, 21 Con., 488; App. Brush Elct. Light Co., 114 Pa. St., 574.

This court has acquired full jurisdiction of this case, to grant compensation, or any relief we find equity demands, and the evidence warrants. Harden v. Hayes, 9 Pa. St., 151; Brown Stat. Frauds, secs. 119, 190. While we hold this defendant could not recover anything in an action at law, for the permanent improvements we have found that he made, which were not included in the contract, yet if he could recover their value, in such an action, their value together with the value of the home, board and the services rendered the uncle, would not afford the nephew adequate relief in this case.

It has been clearly proven that the nephew was induced to rely upon the full performance of the contract, by the uncle, and intending to fully perform on his part, that he made those improvements with the approval of his uncle for his own use and benefit, as the owner of the farm. To require him to receive for them, either their cost or cash value, would be compelling him to sell what he does not desire to sell, and thereby deprive him of his right as the owner of the property to sell or refuse to sell, as he should decide his interests required.

Again, some of these improvements are ditches and underdrains, by which the wet and waste lands were reclaimed—they were made by him not for temporary use only, but as permanent improvements to drain the lands and thereby improve and benefit the farm permanently, for his use and benefit as its future owner. These ditches were located upon, and excavated in, land in which he had then acquired an equitable interest; they became a part of the farm—his equity and rights in the ditches passed into and blended with his equity in the whole farm—his equity in the ditch thereby became as incapable of a separate identity, as the ditch is in-

capable of being separated from the farm and retainig its separate identity as a ditch. His equity in the improvements and in the farm are blended and must stand or fall together— any attempt to separately value his equity in the ditches from the farm is impracticable. We therefore hold that compensation for the improvements is impracticable and wholly inadequate in this case. Brown's Stat. Frauds, sec. 463, 464; last paragraph Matins v. Brown, 4 N. Y. 403.

There were six heirs of Joseph Cooper at the death of the mother in 1883. The uncle was one, and each heir was the owner of one sixth of this farm at the death of the mother. It is admitted that the uncle purchased the five shares, and thereby became the owner of the farm—that he paid for each share $1000 in January, 1894. Estimating the value of the farm upon that basis, it was then worth $6000. The improvements estimated at their claimed cost of $640, makes the cost of the farm at the death of the uncle $6,640. Allowing twenty per cent deduction from $6000—the estimated value of the farm when the nephew moved on to it, for the depreciation in the value of real estate during that time, the farm at the death of the uncle was worth $5,440. The nephew had then fully performed the contract on his part and was the equitable owner thereof, and the uncle was obligated to convey to the nephew the legal title. Equity regards that as done which ought to have been done. Story Eq. sec. 64g; 1 Pom. Eq., 364; Welsh v. Cooper, 119 Mass. 52, 15 Ohio, 571, opin.

The uncle promised to give the farm to the nephew upon performance of the contract by the nephew. After full performance by him, and after making improvements with the uncle's approval, the neglect of the uncle to convey the farm to the nephew, operated as a constructive fraud upon the nephew by which he would have lost $4,500. Brown's Stat. Frauds, sec. 457a, 58; Neales, v. Neals 9 Wall., 1; Book 19, 590.

The heirs stand in the shoes of their brother; they received only such title to the farm as the deceased had at his death, which was the naked legal title, stripped of all beneficial interests, subject to the equitable title of the defendant in said farm, and burdened with the obligation of the deceased, his representatives and heirs, to convey to the nephew. The heirs are therefore estopped from setting up the statute of frauds, on the ground that their refusal and the neglect of the deceased to complete the contract operates as a fraud upon the nephew, and takes this case out of the operation of the statute..

We hold that the only adequate remedy, is specific performance of the contract. Thomas v. Brown, 10 Ohio St., 247; Neales v. Neales, 9 Wall. 1, Book 19, 5-90; Bigelow v. Armes, 108 Ohio St., 10, Book 47, 636; Brown v. Sutton, 129 U. S., 238, Book 32, 664. It is therefore ordered that the petition be dismissed; that each and every one of the heirs at law of John Cooper, deceased, other than this defendant, John J., convey to this defendant, John J., by quit claim deed, all the interest he or she has in said farm, within forty days from and after the close of this term of court, and that in default of such conveyance, that this decree operate as such conveyance.

It is further ordered that the heirs pay the costs of this suit.

Theodore Hall, for Plaintiff.

Wade & Betts, for Defendant John J. Cooper.