## LUDWIG et al. v. BRESSLER.

(Circuit Court of Appeals, Eighth Circuit.   July 25, 1918.   Rehearing Denied September 30, 1918.)

### No. 5054.

1. APPEAL AND ERROR ⬯733—ASSIGNMENTS OF ERROR—SUFFICIENCY.
    In a suit to set aside deeds because the grantors were incompetent and the grantees exerted undue influence, where the court sustained exceptions to a master's report in favor of defendants and entered a decree for plaintiff reciting that exceptions were sustained and the deeds set aside, etc., defendants' general assignment of error that the court found upon the issues for plaintiff, that it found the deeds were procured by undue influence, and that the grantors were incompetent, *held* sufficient under Rule 11 of the Circuit Court of Appeals (188 Fed. ix, 109 C. C. A. ix).

2. APPEAL AND ERROR ⬯766—BRIEFS—SUFFICIENCY.
    Where appellant's brief complied with Rule 24 for the Circuit Court of Appeals (188 Fed. xvi, 109 C. C. A. xvi) save in so far as it failed to set forth the pages of the record where the evidence in support of the argument could be found, the appeal will not be dismissed or the judgment affirmed, as it was necessary for the appellate court to read all of the evidence on the important issues raised in order to decide them.

3. DEEDS ⬯68(1½)—VALIDITY—MENTAL CAPACITY.
    The question of the mental capacity of an aged or feeble-minded person to dispose of his property depends, not on whether the powers of his mind were impaired or whether he had ordinary capacity to do business, but whether he had the smallest capacity to understand what he was doing and to determine intelligently whether or not he would do it.

4. DEEDS ⬯196(3)—VALIDITY—PRESUMPTIONS.
    Notwithstanding the fiduciary relation of parent and child, a deed of gift from one to the other, in the absence of fraud, is presumed valid, and the burden of proof of its invalidity on account of undue influence is on him who asserts it.

5. DEEDS ⬯72(1)—VALIDITY—UNDUE INFLUENCE.
    Influence gained by kindness, affection, care, and service will not be regarded as undue in the absence of fraud or imposition, although it induces the grantor to make an unequal distribution of his property in favor of those who have contributed or are to contribute to his wants, provided such distribution is voluntary.

6. DEEDS ⬯72(1)—VALIDITY—UNDUE INFLUENCE.
    The undue influence for which a deed or will may be avoided must be such as effectually deprives the grantor or testator of the exercise of his free will and coerces him to substitute another's will for his own.

7. DEEDS ⬯211(4)—VALIDITY—EVIDENCE—SUFFICIENCY.
    In a suit to set aside deeds on the ground that the grantors lacked capacity and that the deeds were procured through the grantee's undue influence, evidence *held* insufficient to show the grantors' want of capacity or establish the undue influence.

    Carland, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Suit by Sarah A. Bressler against Mary C. Ludwig and another. From a decree for complainant, defendants appeal. Reversed and remanded, with directions.

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

H. C. Brome, of Worland, Wyo. (Clinton Brome, of Omaha, Neb., on the brief), for appellants.

Frederick S. Berry, of Wayne, Neb. (A. R. Davis, of Wayne, Neb., and Vinton Pike, of St. Joseph, Mo., on the briefs), for appellee.

Before SANBORN and CARLAND, Circuit Judges, and BOOTH, District Judge.

SANBORN, Circuit Judge. This is a suit in equity brought on July 28, 1916, by Mrs. Sarah A. Bressler, to avoid two deeds of a farm in Nebraska made by her father and mother, Jacob D. Fenstermacher and Caroline Fenstermacher, on October 18, 1906, and April 25, 1910, respectively, to Mrs. Mary C. Ludwig, the sister of Mrs. Bressler, and a third deed of the same land to the same grantee made by Mrs. Fenstermacher on April 17, 1914, after the death of her husband. The grounds of the suit are that at the times the respective deeds were made Mrs. Fenstermacher, who held the title to the farm from 1882 until 1906, had not sufficient mental capacity to execute a valid deed, and that she was induced to make each of these deeds by the undue influence of Mr. and Mrs. Ludwig. The case was referred to Honorable Charles F. McLaughlin, the special master, who heard the evidence and made an exhaustive report of the facts and the law as he found them to be, and concluded that the plaintiff was entitled to no relief. Exceptions to this report were filed, and, after hearing them, the court below rendered a decree in favor of the plaintiff. The appeal questions this decree.

[1] Counsel for the appellee has made a motion to dismiss the appeal or to affirm the decree on account of the failure of the appellants to comply with rules 11 and 24 of this court (188 Fed. ix, xvi, 109 C. C. A. ix, xvi). Rule 11 requires the appellant to file an assignment of errors which shall set out separately and particularly each error asserted and intended to be urged. The court below made no order sustaining or overruling any of the specific exceptions to the master's report and filed no opinion or finding, but simply rendered a decree which recited that it sustained "the exceptions to the report of the master filed by the complainant herein as to the general conclusion of the master upon the law and the facts," and decreed that the three deeds be avoided and the plaintiff have an undivided half of the land. The appellants assign as errors: (1) That the court found upon the issues generally for the plaintiff and against the defendants; (2) that it found that the deeds were procured by them by undue influence; (3) that it found that Mr. and Mrs. Fenstermacher were, on October 18, 1906, and thereafter continually mentally incompetent and incapable of making valid conveyances of real estate, and that it awarded an undivided half of the land to the plaintiff. In the absence of any opinion or finding of the court below, except that which appears in the decree, this assignment of errors is clearly sufficient. The court below could not have rendered the decree without first finding either mental incompetency of the Fenstermachers or undue influence by the defendants, and the plaintiff assigned each of these findings and the general finding for the plaintiff as errors. What the court may have thought

regarding the minor issues did not appear, and the appellants should not be deprived of their right to a review of the findings on the crucial questions at issue because they did not guess what the court thought regarding others and charge it with error in that thought.

[2] Rule 24 requires the appellants to file a brief which shall contain: (1) A statement of the case exhibiting the questions involved and the manner in which they were raised; (2) a specification of the errors relied upon and a statement as particularly as may be in what the decree is alleged to be erroneous; (3) a brief of the argument presenting a clear statement of the points of law or fact to be discussed with a reference to the pages of the record and the authorities relied upon in support of each point. The brief of the appellants contains: (1) A fair statement of the case which discloses two controlling questions, the alleged incompetency of the Fenstermachers to make the deeds and the alleged undue influence that induced them to do so; (2) the assignment of errors; (3) an argument which presents the points of law which they discuss, and a citation of the authorities on which they rely. This argument also states decisive facts which appellants maintain were established by the evidence, but the brief does not set forth the pages of the record where the evidence in support of some of these facts may be found. However, as the master's report sets forth the facts which he found, and his conclusion was in favor of the appellants, and, as all the evidence on the two important issues must be read and considered in order to decide them, the court is unwilling to deprive the appellants of the review of the decision below on account of their failure to specify the pages of the record where some of the evidence in their favor may be found, especially in view of the fact that the opinions of the special master and the court below are in conflict. The motion to dismiss or affirm is therefore denied.

The real issue in this case is the validity of the deed of Mr. and Mrs. Fenstermacher to Mary C. Ludwig, dated October 18, 1906, for this deed conveyed the farm consisting of about 350 acres of land. The deed of April 25, 1910, covered the same land and 40 acres more that seems to have been omitted from the earlier deed by mistake, and the deed of April 17, 1914, was a quitclaim deed of the same property made by Mrs. Fenstermacher after the death of her husband. If the deed of October, 1906, was not invalid, the subsequent confirmatory deeds are of little account. It follows that in the examination and consideration of the evidence the date, October 18, 1906, has been kept constantly in mind, for it is the competency of Mrs. Fenstermacher on that day and the undue influence upon her of the defendants on that day, and not at later dates, that condition the validity of the deed of that date and the decision of this case.

The evidence as to the mental capacity of Mrs. Fenstermacher to understand what she was doing when she made them and intelligently to determine whether or not she would do it is conflicting, but the preponderance of it is that she had ample capacity to understand the effect of her deeds and to decide intelligently whether or not she should make them. On the question of undue influence the evidence is more evenly balanced. All the evidence on these issues has been thoughtfully

considered, but it is too voluminous for recital in this opinion. The rules of law by which the evidence upon this case must be measured, and by which the issues it presents must be decided, are established beyond controversy by the decisions of the federal courts.

[3] The question of the mental capacity of an aged or feeble person to dispose of her property is not whether or not the powers of her mind were impaired, or whether or not she had ordinary capacity to do business, but it is whether or not she had any—the smallest—capacity to understand what she was doing, and to determine intelligently whether or not she would do it. Sawyer v. White, 122 Fed. 223, 224, 58 C. C. A. 587, 588; Mann y. Keene Guaranty Sav. Bank, 29 C. C. A. 547, 548, 86 Fed. 51, 52; Rugan v. Sabin, 3 C. C. A. 578, 584, 53 Fed. 415, 421; Stewart's Ex'r v. Lispenard (N. Y.) 26 Wend. 303; Ex parte Barnsley, 3 Atk. 168; Hill v. Nash, 41 Me. 586, 66 Am. Dec. 266; Jackson v. King (N. Y.) 4 Cow. 216, 15 Am. Dec. 354; Dennett v. Dennett, 44 N. H. 531, 84 Am. Dec. 97; President, etc., v. Merritt (C. C.) 75 Fed. 480, 492. Any other test would wrest from the feeble and the aged that power over their earnings and savings which is their best safeguard against misfortune, and would produce endless uncertainty, difficulty, and litigation.

[4] Counsel for the complainant contend that the intimate and affectionate relation between Mr. and Mrs. Fenstermacher and Mr. and Mrs. Ludwig which existed while they were living together from 1903 until the death of the former in 1914 and 1915, respectively, raise the legal presumption that the deeds in question were voidable. There are cases in which fraud has been charged, and some others in which the facts have established a practical surrender of the will of the grantor to the grantee where such a presumption has been indulged. Gibson v. Hammang, 63 Neb. 349, 352, 353, 88 N. W. 500; Bennett v. Bennett, 65 Neb. 432, 440, 91 N. W. 409, 96 N. W. 994; Allore v. Jewell, 94 U. S. 506, 510, 24 L. Ed. 260. But the established rule in the courts of the United States is that, notwithstanding the fiduciary relation of parent and child, a deed of gift from one to the other in the absence of fraud is presumed to be valid, and the burden of proof of its invalidity on account of undue influence is on him who assails it. Towson v. Moore, 173 U. S. 17, 19, 20, 24, 19 Sup. Ct. 332, 43 L. Ed. 597; Jenkins v. Pye, 12 Pet. 241, 253, 254, 9 L. Ed. 1070.

[5] Influence gained by kindness, affection, care, and service will not be regarded as undue, in the absence of fraud or imposition, although it induces the grantor to make an unequal distribution of his property in favor of those who have contributed, or are to contribute, to his wants, if such distribution is voluntarily made. As was said in Mackall v. Mackall, 135 U. S. 167, 172, 10 Sup. Ct. 705, 707 (34 L. Ed. 84):

"It would be a great reproach to the law if, in its jealous watchfulness over the freedom of testamentary disposition, it should deprive age and infirmity of the kindly ministrations of affection, or of the power of rewarding those who bestow them." Sawyer v. White, 122 Fed. 223, 225, 58 C. C. A. 587, 589; McElroy v. Masterson, 156 Fed. 36, 40, 41, 84 C. C. A. 202, 206, 207; Alcorn v. Alcorn (C. C.) 194 Fed. 275, 280; Meyer v. Jacobs (C. C.) 123 Fed. 900, 912.

[6, 7] The undue influence for which a deed or will may be avoided must be such as effectually deprives the grantor or testator of the exercise of his free will and coerces him to substitute another's will for his own. Conley v. Nailor, 118 U. S. 127, 133, 135, 6 Sup. Ct. 1001, 30 L. Ed. 112. "If it does not appear," says the Supreme Court in Ralston v. Turpin, 129 U. S. 663, 670, 9 Sup. Ct. 420, 423 (32 L. Ed. 747), "that he was incapable, by reason of physical or mental debility, of exercising a discriminating judgment in respect to the disposition of his property, or was driven to make the gifts in question against his own wishes, and under some influence that he was unable, no matter from what cause, to resist, the relief asked must be denied. 'The undue influence for which a will or deed will be annulled,' this court said in Conley v. Nailor, 118 U. S. 127, 134 [6 Sup. Ct. 1001, 1005 (30 L. Ed. 112)], 'must be such as that the party making it has no free will, but stands in vinculis.'"

Guided by these rules of law, the evidence, arguments, and briefs have been considered. They have convinced that the deeds in question in this case were not carelessly or hastily made, but that they were the means of the accomplishment of a preconceived plan thoughtfully adopted and steadily pursued by the Fenstermachers from 1883 until their respective deaths. In the rural districts of the eastern part of this country for more than 150 years it has been a practice, so common that it is not beyond judicial notice, for persons who owned farms and had several children to give the home farm to one or two of the children in consideration that he or they would carry it on and care for the parents in the later years of their lives, and to let and expect the other children to seek their fortunes elsewhere, free from the duty to care for their parents. The evidence in this case has convinced that the key to the conveyances of Mr. and Mrs. Fenstermacher that are here challenged is that as early as 1882, when they bought this land, they conceived the plan to follow this practice, and in that way to insure their support and comfort and a home for themselves and those of their children who should care for and support them. To this end they caused the land to be conveyed to their son Peter and their married daughter Mrs. Ludwig, whose husband and Peter at first undertook to operate it. To the same end in 1881 they caused the land to be conveyed to Mrs. Fenstermacher, and subsequently arranged that the two daughters and their husbands should live upon and carry on the farm free of rent while the parents moved to town. Mr. and Mrs. Bressler were offered the opportunity and the option of operating the farm on the same terms that were offered to Mr. and Mrs. Ludwig. They first chose to accept it, but shortly chose to reject the opportunity and the offer and to seek their fortunes elsewhere, while Mr. and Mrs. Ludwig accepted the offer, lived upon and carried on the farm from 1883 until 1908, and from 1893 to 1908 boarded and cared for their parents at the farm, and from 1908 until their respective deaths in 1914 and 1915 at their home in West Point. To the same end in 1906, after Mr. and Mrs. Ludwig had remained with them and carried on the farm for 23 years, they conveyed it to Mrs. Ludwig, for one dollar and a recited annual consideration of $600 during the life of the sur-

vivor of them, a consideration evidently inserted to insure the suitable board, clothing, care, and comfort of the grantors during their lives. To carry out this plan, they made the second deed to convey the omitted 40 acres in 1910, and to the same end, after Mr. Fenstermacher's death, Mrs. Fenstermacher made the quitclaim deed to Mrs. Ludwig. Regarding this deed, Mr. Steuffer, who drew it, testified: That he had been connected with the West Point National Bank since 1885, and had been acquainted with Mr. and Mrs. Fenstermacher for many years; that Mr. Ludwig told him Mrs. Fenstermacher wished to see him, and he went to see her, and she gave him the data with which to prepare the deed; that he went back to his office to prepare it and then returned to her house, and she executed it on the 17th of April, 1914; that he talked with her in the German language; that he thought there was no impairment of her mental powers; that she was pretty good for her age; that no one said anything to him about the way in which the deed should be drawn except Mrs. Fenstermacher; that after he drew the deed he read it and translated it to her in German so that she would understand what it was, and she signed it on April 17, 1914.

In the light of this evident plan and the fact that the deeds of 1906 and 1910 were made when Mr. Fenstermacher was in good health and unimpaired mental powers, the evidence not only fails to convince that either Mr. or Mrs. Fenstermacher were, when they made their deeds, without mental capacity to understand what they were doing, or to determine intelligently whether or not they should make the deeds, but it leaves no doubt that each of them did understand what they were doing, and that they did intelligently determine to make the deeds to carry out the preconceived intent and purpose to which they had devoted this land from the time they bought it.

Nor has the complainant established by a fair preponderance of the evidence that Mrs. Fenstermacher was driven to make any of the deeds in question against her own wishes, or under any influence which she was unable to resist that deprived her of the exercise of her free will. The only evidence to that effect is the testimony of Mr. and Mrs. Bressler, interested witnesses, to what they testify that Mrs. Fenstermacher said about the deeds of 1906 and 1910 in 1914, on the day after her husband's funeral when she was in the depths of her grief, and this testimony is met by the denial of much of its substance by Mrs. Ludwig and by the patent and persuasive fact that never after the deed of 1906 was made until that day, so far as the evidence discloses, did either she or her husband complain or object to or question the validity of the deed of 1906, or that of 1910, that four years after they made the first deed they made a second deed of the land described in the first deed, and that after the death of her husband she quitclaimed all the property to Mrs. Ludwig. If the deed of 1906 had been made against the will of either Mr. or Mrs. Fenstermacher, they would undoubtedly have challenged it, or complained of it to Mr. and Mrs. Bressler while they were both in life, and if they desired would have had it revoked.

The conclusion is that the decree below should be reversed, with costs against the complainant, and the case must be remanded to the court below, with directions to overrule the exceptions to the master's report and to render a decree for the defendants.

It is so ordered.

CARLAND, Circuit Judge (dissenting). The errors assigned were substantially as follows:

(1) That the court erred in finding that the deeds were obtained by undue influence.

(2) That the court erred in finding that the Fenstermachers were mentally incompetent and incapable of making the deeds. There was no assignment that the court erred in finding that the deeds were obtained by fraud.

These assignments of error accompanied 330 printed pages of testimony and were simply reprinted in the brief as assignments of error. I do not think this was a compliance with Rule 24.

Coming to the merits, the majority opinion says:

"And the grounds of the suit are that at the time the respective deeds were made, Mrs. Fenstermacher, who held the title to the farm from 1882 to 1906, had not sufficient mental capacity to execute a valid deed, and that she was induced to make each of these deeds by the undue influence of Mrs. Ludwig."

Of course, want of mental capacity and undue influence have, in cases of this kind, a well-known meaning. The complaint, however, alleged:

"But the same were obtained and procured through the manipulation, fraud, and deceit of the defendants and each of them, and by means of the influence and control which said Mary C. Ludwig had over her said mother and unduly exercised."

The prayer of the complaint asked that the several deeds be declared not to be the acts and deeds of Caroline Fenstermacher, but that they were "procured by the fraud and undue influence of the defendant."

A careful reading of the evidence has convinced me that a clear case of fraud in the procurement of the deeds was made out by the plaintiff. The decision of the majority is, in my opinion, not only wrong on the facts, but convicts a mother, who the evidence shows loved her daughters wth equal affection, of conveying without consideration property of the reputed value of $75,000 to one daughter without giving the other anything. The mere statement of what was accomplished suggests something wrong.

I must dissent.