## GIBSON v. COLLINS et al.

(Court of Appeals of District of Columbia. Submitted December 1, 1924. Decided January 5, 1925.)

No. 4095.

1. Deeds ⬅️210—Conveyance held, in consideration of services rendered and to be rendered, not bare gift.

Evidence *held* to show that deed of land to grantor's daughter-in-law was in consideration of services rendered and to be rendered, and not bare gift.

2. Deeds ⬅️211(1)—Evidence held sufficient to establish mental capacity of grantor.

Evidence *held* to establish aged woman's mental capacity to make deed of property to daughter-in-law in consideration of services rendered and to be rendered.

3. Deeds ⬅️211(4)—Evidence held insufficient to show undue influence in procurement of deed.

Evidence of conveyance to grantor's daughter-in-law in consideration of services rendered and to be rendered *held* insufficient to show undue influence.

4. Deeds ⬅️68(3)—Old age, eccentricity, partial impairment of faculties, and lapse of memory not affecting immediate transaction do not constitute want of mental capacity, invalidating deed.

Old age, eccentricity, partial impairment of mental faculties, delusion, or lapse of memory not affecting immediate transaction, are insufficient to warrant setting aside conveyance for want of mental capacity to make.

5. Deeds ⬅️190—Bill in suit to set aside deed and proof held fatally variant.

Bill in suit to set aside deed, alleging procurement of deed through efforts of defendant, and proof, conclusively establishing that transaction was brought about through efforts of another person, *held* fatally variant.

Appeal from Supreme Court of District of Columbia.

Suit by Sarah Gibson, personally and by her next friend, Patrick J. Collins, against Anna Gibson, wherein Patrick J. Collins and others, heirs at law of plaintiff, who died pending appeal, were substituted as appellees. From a judgment for plaintiffs, defendant appeals. Reversed and remanded, with directions.

Certiorari denied. 45 S. Ct. 508, 69 L. Ed. ——.

J. A. O'Shea, of Washington, D. C., for appellant.

G. E. Sullivan, of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, VAN ORSDEL, Associate Justice, and BLAND,

Judge of the United States Court of Customs Appeals.

VAN ORSDEL, Associate Justice. This appeal is from a decree of the Supreme Court of the District of Columbia, setting aside a deed to certain real estate situated in the city of Washington. The bill was filed in the court below by Sarah Gibson, personally and by her next friend, Patrick J. Collins, against Anna C. Gibson. A short time after the decree was entered, Sarah Gibson died, and her heirs at law have been substituted as parties appellee in this proceeding.

It appears that Mrs. Sarah Gibson, hereafter for convenience referred to as the mother, and the defendant Anna C. Gibson and her husband, the son of Sarah Gibson, lived together for the period of 25 years, or during the whole married life of the son and defendant. In November, 1921. John T. Gibson died. On the day of the funeral, when the relatives returned to the house, Patrick Kennedy, brother-in-law of Mrs. Sarah Gibson, had a conversation with defendant, in which he requested her to remain with the mother and take care of her, on the assurance that the property here in question would be conveyed to her. Defendant agreed to stay and continue the relations as they had existed during all the years preceding. Whereupon Kennedy, without any suggestion from defendant, procured a reputable lawyer, who came to the house, and after a conversation with the mother, during which the defendant was not present, was instructed by the mother to prepare a deed conveying the property to defendant. After the attorney left, the mother spoke to defendant of the visit of the attorney and said to her: "I am going to give this house to you."

On the following day, Kennedy brought the attorney with the deed to the house, and in the presence of Mrs. Kennedy, sister of the mother, the deed was discussed. Upon protest from Mrs. Kennedy that the mother was deeding away her property absolutely, it was agreed that a clause should be inserted in the deed reserving a life estate in the mother. This was done, and the deed was executed and witnessed by the attorney and a Mrs. Mary E. Wannall, who was rooming in the house. Defendant was not present, but was called down to the room and the attorney handed her the deed, when the mother said: "Annie, I am turning the house over to you."

For several years the defendant had been working as a clerk in a grocery store, from which she was at this time receiving a salary of $40 per week. Following the death of her husband and the conveyance of the property, the defendant employed a maid to take care of the house and to look after the care of the mother during the time when she was absent attending to her work. She opened an account at the grocery store across the street, instructing the groceryman to furnish the mother or the maid whatever they required. She paid the bills. She also paid all bills for the maintenance and support of the household. The mother collected the rents from the roomers in the house and for the use of the garage, which had been erected at the expense of the defendant prior to her husband's death.

This arrangement continued until October, 1922, when, during the absence of defendant from the house, Patrick Kennedy and his wife came and induced the mother to go with them to their home. When defendant returned, she ascertained from the neighbors where the mother had gone. She telephoned, and was informed that the mother would not return home that night. Upon further inquiry she was put off with the assurance that the mother would return soon. The first notice she had that anything was wrong, or that any fault was found with the care she was according the mother, was when the present suit was filed on November 10th by Patrick J. Collins, a brother of the mother, as her next friend, and by the mother, Sarah Gibson.

In the bill the conveyance is assailed on the ground that there was no valuable consideration; that the mother was 72 years of age at the time of the execution of the deed; that she was in a senile mental condition and unable to understand or comprehend ordinary business transactions; that her condition at the time of the signing of the deed had been aggravated by the death of her only son, the husband of defendant; that defendant took advantage of the situation by having the deed prepared and executed by a notary public, who conducted only a hurried reading of the deed; that the mother thought she was executing a will providing that the property should go to defendant at her death, upon the understanding that defendant would care for her during her lifetime; that defendant failed to provide for the mother, failed to furnish sufficient food and nourishment, and neglected her; and that plaintiff Patrick J. Collins, learning of the

alleged impositions practiced upon his sister, brought this suit. It was also averred that the mother lacked mental capacity to make said deed, or appreciation or understanding of its force and effect.

In the answer defendant denied that any imposition was practiced upon the mother, or that she secured the execution of the deed, but alleged that Patrick Kennedy, brother-in-law of the mother, sent a reputable lawyer to see the mother and confer with her, and that as a result of this consultation the deed in question was prepared, executed by the mother, and delivered to defendant. She denies that she exercised any influence over the mother to procure the deed, or took any part whatever in obtaining the deed.

The trial justice, in an elaborate opinion, found as a fact that the execution of the deed was not procured by any act of defendant, but upon the advice of Patrick Kennedy; that the conversation between Kennedy and defendant, after returning to the house from the funeral, was solely at the instance of Kennedy, and that he proposed the conveyance of the property to defendant; that Kennedy procured the attorney and sent him to consult with the mother; that the execution of the deed was conducted in the absence of defendant; and that defendant took no part in the matter other than to receive the deed after it had been executed.

As to the treatment accorded the mother during the period of almost a year following the death of the son the court said: "I do not think that Mrs. Anna Gibson neglected this lady. There was no marked change in their course of living. I mean by that that Mrs. Anna Gibson had for years before found it necessary to go to work, and she continued in her employment. She made selection of at least the maid who testified on the stand, apparently employed a colored woman who would answer the purposes of the situation, not merely in running the house, but in looking after this old lady during Mrs. Anna Gibson's absence from the house at her place of employment."

The court, however, after a somewhat severe cross-examination of defendant, covering several printed pages of the record, concluded the examination as follows: "Q. And then Mr. Dunne handed you this deed? A. Mr. Dunne handed me the deed; yes. Q. Did Mrs. Sarah Gibson say anything at that time at all? A. She talked about the deed; she said, 'Annie, I am turning the house over to you.' Q. Was that after Mr. Dunne had given you the deed? A. Yes. Q. Mrs. Sarah Gibson spoke up and said that, did she? A. Yes; she did. Q. Then, if I understand your testimony, Mrs. Gibson, it is this: As far as you are concerned, this conveyance to you by Mrs. Sarah Gibson of this house was a gift? A. Absolutely. Q. No condition and no qualification; no obligations of any kind on your part; but it was an out and out gift by her to you at that time? A. Yes."

On this statement the court in its opinion says: "I had supposed there would be some evidence here that Mrs. Anna Gibson had undertaken something for this; but she says, has made it clear to-day, that was not her understanding and not her intention. She was offered a gift of this property, and she accepted it. I do not know why people should not accept gifts, ordinarily, if people wish to make them. All of us, I suspect, enjoy such favors of fortune as that; but the donor of the gift must know what he or she is about before the gift can be effected."

[1] The court emphasizes the fact that there was not any reason for making such a gift. In this, we think, the court was in error. The consideration for the execution of this conveyance should be gathered from the record as a whole, rather than from the statement extracted at the end of a searching cross-examination. Unquestionably defendant had in mind a money consideration when she referred to the conveyance as a gift. The record discloses, in our judgment, a most valuable and adequate consideration for this deed. For 25 years defendant had lived with the mother and had contributed to her comfort and care. The very agreement suggested by Kennedy, who had for some years been advising the mother in respect to her business affairs, involved the consideration that defendant should remain and care for the mother during the balance of her life. To hold, therefore, that this conveyance amounted to nothing more than a gift, is contrary to the record, and contrary to the agreement and understanding of the parties.

This narrows the case to the question of the mother's mental capacity to make a valid deed at the time this conveyance was made. She testified on the witness stand when this case was tried in the court below, almost two years after the execution and delivery of the deed, and but a short time before her death, and in respect of her testimony the court in the opinion says: "When she was on the stand, her answers to the questions put to her indicated no delusions at all. They showed, first, her slowness in grasping and comprehending the questions put; but, when

finally grasped and comprehended, the answer was intelligible."

Two physicians were produced by plaintiffs, one of whom had examined Mrs. Sarah Gibson about six weeks before he testified, in June, 1923, or almost two years after the execution of the deed. This witness testified that he had not examined her previous to that time, and that the occasion of his examining her was to treat her for injuries received from falling down stairs; "that he would say from his examination it was a progressive case of senility; that it had been advancing for a number of years; her arteries are very hard; blood pressure he would call 200."

The other physician produced by plaintiffs attended the mother professionally in June, 1918, for an attack of bronchitis, over three years prior to the execution of the deed. He testified that "he noticed her mental condition was not acute; that her memory for recent events was poor; * * * that she, Mrs. Sarah Gibson, was senile in her mentality; that the medical significance was, as he conceived it, that the patient has lost the impression for recent events and lives in the past; that a patient, in addition to that, is not fully able to take care of herself as a normal individual, takes care of themselves with reference to her dress, with reference to her cleanliness and person, and there is a general misadaptation for her environment; that such a condition may come from age, or it may be a recent thing. Everybody of 60 would not have the commensurate amount of mental depreciation, but there is in advance in age a certain amount of depreciation; that, when that state of depreciation called senile begins, it is the medical experience that it increases, and there is no known cure for it."

The sister, Mrs. Kennedy, and the brother, John Collins, who admitted that they had never contributed anything to the support of their mother, testified to the effect that she was mentally incompetent to comprehend what she was doing at the time the deed was executed. This, however, is rebutted by five disinterested witnesses, who lived in the vicinity where the mother resided before and after this transaction. They testified that before and after the death of the son they frequently talked with her; that she understood the conversation, talked intelligently, and that they saw no change in her mental condition; that they never heard her complain about the treatment of defendant; that they were frequently in and about the house, and that the house was well kept, well heated, and that the mother was well provided for up until the time in October when the Kennedys induced her to leave.

One of these witnesses was a doctor, who lived within three doors of the Gibson house. He testified that he knew the mother before and after the death of the son. He attended the mother for minor ailments perhaps 15 or 20 times. He testified that he saw the mother, "you might say, every other day; sometimes she would be out on her steps; sometimes she would be out in the yard, and I saw her probably dozens, perhaps hundreds, of times. I held short conversations with her, perhaps passing the time of day, and on those occasions noted nothing that would appear unusual—that is, for the average person around 75 or 80—nothing that would attract my attention as being out of the ordinary. She was becoming infirm. The infirmities that I observed in her were that she seemed to be unable to get around actively. * * * She was normal mentally."

The lawyer who prepared the deed, took the acknowledgement and witnessed it, and the witness, Mrs. Wannall, both testified that at the time of the execution of the deed the mother had a clear comprehension of what she was doing and understood fully the effect of the conveyance she was making.

[2, 3] In the light of this testimony and the finding of the court as to her condition at the time she testified in this case, we think the record discloses conclusively that she was mentally competent to make the deed in question; that it was her desire to do so, not only to compensate defendant for services rendered prior to the death of the son, but to compensate her for the future care and comfort which she might afford. In view of this, and the finding of the court below, with which we agree, that defendant was guilty of no fraud and exercised no duress and influence to procure this conveyance, and that she carried out her part of the agreement faithfully until the Kennedys induced the mother to leave defendant and take up her residence with them, we are irresistibly forced to the conclusion that under every rule of equity, the conveyance should be sustained.

While the question of fraud is entirely eliminated from the case, the court below seems to have been influenced to some extent by the fact that this transaction was brought to the attention of the mother and carried out at a time when she was bowed down with grief over the death of her son. Actions betraying gratitude for services ren-

dered or to be rendered to an aged person under the circumstances here detailed, and the relations which had existed between the mother, her son, and daughter-in-law over a period of 25 years, do not constitute undue influence. As the court said in Mackall v. Mackall, 135 U. S. 167, 172, 10 S. Ct. 705, 707 (34 L. Ed. 84): "It would be a great reproach to the law if, in its jealous watchfulness over the freedom of testamentary disposition, it should deprive age and infirmity of the kindly ministrations of affection, or of the power of rewarding those who bestow them." And in Conley v. Nailor, 118 U. S. 127, 134, 6 S. Ct. 1001, 1005 (30 L. Ed. 112) the court in announcing the rule said: "The undue influence for which a will or deed will be annulled must be such as, that the party making it has no free will, but stands in vinculis." The situation disclosed in the present case falls far short of meeting the heavy burden cast upon the plaintiffs in attempting to establish the invalidity of the deed upon the theory that it was executed as the result of undue influence exerted upon the mother.

· [4] The rule is no less stringent on the question of lack of mental capacity. As was said by Judge Sanborn in Ludwig v. Bressler, 253 F. 8, 11, 165 C. C. A. 28, 31: "The question of the mental capacity of an aged or feeble person to dispose of her property is not whether or not the powers of her mind were impaired, or whether or not she had ordinary capacity to do business, but it is whether or not she had any—the smallest—capacity to understand what she was doing, and to determine intelligently whether or not she would do it. Sawyer v. White, 122 Fed. 223, 224, 58 C. C. A. 587, 588; Mann v. Keene Guaranty Sav. Bank, 29 C. C. A. 547, 548, 86 Fed. 51, 52; Rugan v. Sabin, 3 C. C. A. 578, 584, 53 Fed. 415, 421; Stewart's Ex'r v. Lispenard (N. Y.) 26 Wend. 303; Ex parte Barnsley, 3 Atk. 168; Hill v. Nash, 41 Me. 586, 66 Am. Dec. 266; Jackson v. King (N. Y.) 4 Cow. 216, 15 Am. Dec. 354; Dennett v. Dennett, 44 N. H. 531, 84 Am. Dec. 97; President, etc., v. Merritt (C. C.) 75 Fed. 480, 492. Any other test would wrest from the feeble and the aged that power over their earnings and savings which is their best safeguard against misfortune,

and would produce endless uncertainty, difficulty, and litigation." Unquestionably the infirmity of years was showing its influence upon the mother in this case, but not to an extraordinary degree; not to the extent of disabling her from determining whether or not she desired to make the conveyance at the time it was made; and not to the extent of disabling her from transacting her own affairs, in a limited way, or acting upon the advice of others.

Old age, eccentricity, partial impairment of mental faculties, delusion or lapses of memory not affecting the immediate transaction, are not sufficient basis for setting aside a conveyance, if the grantor possesses sufficient mental capacity to comprehend the nature of the transaction. Crosby v. Dorward, 248 Ill. 471, 94 N. E. 78, 140 Am. St. Rep. 230. That the mother, in this instance, at the time the deed was executed, the moment when mental capacity must be tested, was sufficiently in possession of her faculties to comprehend the nature of the transaction, its object, and the reason for making the conveyance, we think is beyond question. In the light of the record, every principle of justice and equity impels us to uphold the validity of this conveyance.

[5] It is urged that there is a fatal variance between the averments of the bill and the proof as adduced by the plaintiffs. The bill charges that the conveyance was obtained through the efforts of the defendant, while the proof establishes conclusively that the transaction was brought about through the efforts of the brother-in-law, Patrick Kennedy. While the objection is undoubtedly well taken, we do not deem it necessary to send the case back for amendment of the bill, or to consider the bill amended in this particular, since such an amendment, in the light of the evidence adduced, would render the bill subject to dismissal upon motion. We therefore deem it wise to dispose of the case on its merits and terminate further possible litigation.

The decree is reversed, at the cost of the plaintiffs, and the cause remanded, with direction to the court below to dismiss the bill and restore the possession of the property in question to defendant, Anna C. Gibson.